[Civ. No. 3185.  Third Appellate District.—April 7, 1927.]

A. H. NUNEMACHER, Appellant, v. WESTERN MO-
TOR TRANSPORT COMPANY (a Corporation), Re-
spondent.

[1] Fraud—Sale of Stock—Profitable Business—Possession of
Facts—Opinion of Salesman.—Where the buyer of stock in a
corporation engaged in the passenger stage business is put in
possession of the facts upon which the stock salesman endeavors
to convince said buyer inferentially that said business is a profit-
able one and upon which said salesman bases the opinion that
the business is profitable, the statement of such opinion is not a
sufficient basis to support a charge of fraudulent misrepresenta-
tion in the sale of said stock.

[2] Id. — Profitable Business — Warranted Statement. — A state-
ment that a particular business is profitable, even though untrue,
is not necessarily fraudulent; and this is particularly so in a case
where such statement is made in good faith and is reasonably
warranted by the latest available financial report and the fact
that the business is steadily increasing in volume.

[3] Id.—Fraud and Deceit — Absence of Detriment—Judgment.—
In an action for damages for fraud and deceit, plaintiff has no
cause of action unless detriment has been caused thereby; and in
this action in which plaintiff sought to recover as damages the
difference between the amount which plaintiff paid for certain stock
and its alleged value at the time of purchase thereof, the trial
court having found, from sufficient evidence, that there was no
difference between the purchase price and the value at the time of
purchase, there was no right of recovery; and the fact that one
year later said stock was worth less than the purchase price did not
show that its value was less than the purchase price at the time of
purchase.

(1) 26 C. J., p. 1085, n. 20; 27 C. J., p. 74, n. 68.  (2) 26 C. J.,
p. 1112, n. 45; 27 C. J., p. 70, n. 37.  (3) 4 C. J., p. 883, n. 33; 22
C. J., p. 190, n. 44; 26 C. J., p. 1167, n. 62; 27 C. J., p. 71, n. 49.

1. Right to rely on expressions of opinion, note, 37 L. R. A.
604.  See, also, 12 R. C. L. 359.

2. Expression of opinion as fraudulent representation, note,
35 L. R. A. 417.  See, also, 12 Cal. Jur. 729; 12 R. C. L. 247.
Duty of purchaser of corporate stock to verify statements as to
financial condition of corporation, note, 14 L. R. A. (N. S.) 1176.
See, also, 12 R. C. L. 379.

3. See 12 Cal. Jur. 765; 12 R. C. L. 453.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

John L. McNab and Byron Coleman for Appellant.

DeLancey C. Smith, C. J. Goodell and Sanborn & Roehl for Respondent.

FINCH, P. J.—Two causes of action are stated in the complaint.  In the first it is alleged that the plaintiff was induced by false and fraudulent representations made by defendant to purchase 100 shares of its treasury stock at $100 a share, to the plaintiff's damage in the sum of $5,629. In the second it is alleged that the defendant is indebted to the plaintiff for services performed in the sum of $527.50. The court entered judgment in favor of the defendant on the first cause of action and in favor of the plaintiff on the second.  The defendant has appealed from the part of the judgment which is against it, but has presented no argument in support of its appeal.  It is deemed, therefore, that such appeal has been abandoned.  The plaintiff has appealed from the judgment in favor of defendant on the first cause of action.  It is conceded that there is a substantial conflict in the evidence bearing upon some of the alleged false representations, but the plaintiff contends that the evidence shows without dispute that the stock salesman of the defendant falsely "represented to the plaintiff that the business of the defendant was a good and profitable business and . . . was making a profit at the time" the representations were made.

The defendant operated certain passenger stage lines from about December 1, 1919, to November, 1921.  During that period it acquired other stage lines, which it operated until the latter date.  Its property was then taken over by the California Transit Company.  In the month of June, 1920, a certified public accountant, employed by a person who thereafter purchased a large number of shares of the defendant's capital stock, audited the books of the corporation and made a written report thereof, dated June 20, 1920.  The report

covers the period from December 1, 1919, to May 31, 1920. It appears therefrom that up to the latter date the defendant had issued 1,201 shares of stock and that the net worth of the corporation was $121,899.95; that for the six months covered by the report the respective monthly receipts, almost entirely from the sale of tickets, were $2,336.75, $2,235.90, $2,662.28, $5,246.74, $5,525.70, and $10,272.47; and that the corresponding monthly expenses were $3,148.77, $2,890.17, $3,207.22, $5,095.74, $5,321.26, and $6,776.76. From these figures it appears that the business was conducted at a loss during the first half of the period and at a profit during the succeeding three months. The evidence shows and the court found that the report correctly sets forth the business of the defendant up to May 31, 1920. The defendant employed the same accountant to audit its books for the remaining seven months of the year 1920. Neither party questions the accuracy of the report of that audit, dated January 31, 1921. It appears therefrom that up to December 31, 1920, the corporation had issued a total of 1,935 shares of stock and that the net worth of the corporation was then $170,287.53. The monthly receipts and expenses are not stated, but the total amount received from the sale of tickets during the seven months was $112,363.17, and the amount of the expenses was $135,621.66. The accountant included in the expenses a charge of $15,666.52 for depreciation of automobiles, equipment, furniture, and fixtures. During the year 1920 A. J. Hanford was president of the corporation and Oscar H. Klatt was secretary. John M. Jackson was its stock sales agent.

During the months of October, November, and December, 1920, Jackson and the plaintiff frequently discussed the defendant's business prospects and the value of its stock. They carefully went over the report of June 20, 1920. Plaintiff testified: "He (Jackson) said, 'You can see from the beginning of the year where we operated at a loss, and how we crept up. . . . You see in the month of May we made a profit of $3,495.71.' And I asked him whether the same proportionate profit had been made for the balance of the year and he said, 'Yes, it has increased in proportion.' He told me that the last half of the year, from June to December, had shown an increased proportionate profit as shown on this statement. . . . Q. Didn't you learn, Mr. Nunemacher, just

about the time when you were negotiating for this stock that this company was taking over the Bay Shore line at a valuation of approximately $40,000? A. I think . . . it had been taken over. . . . Q. You said a minute ago Mr. Jackson told you that the company was taking over new lines from which they were expecting increased profits, didn't you? A. Increased in proportion to what the statement shows. . . . He told me that the new acquisitions would increase the profits in proportion—not as far as the statement shows. . . . He says, 'The existing business is showing this profit, . . . and without anything further you can see what the business is making.' . . . He said that with respect to the holdings at the time the statement was made out. . . . Q. Didn't you say just now that Mr. Jackson told you that the company was acquiring these new lines, and from them they expected the profits would increase proportionately, as they had increased in the May statement? A. I think so. . . . In going up to Mr. Jackson's office he would look at the statement, and I would go over the statement with him, showing the percentage of profits made at that time of the year, which was in around October, and . . . he told me about acquiring the lines and he says, 'We are making money as you can see from this statement, and our proportionate profits are going right ahead up until now; we are increasing our profits every month.' Now, whether everything else was taken into consideration, I don't know, but he understood the business, and he understood that statement, and the increased profits were going ahead all the time, is the way I took it. . . . I asked Mr. Jackson whether there had been any statement made out. He said no, they were about making out a statement. Q. So they were going to make out a statement at the end of the year? A. Yes. Q. You bought this stock on the 31st of December, 1920? A. I did. Q. You did not wait until the annual statement was made out? A. No. . . . Q. In the month of December you did ask Mr. Jackson for a statement showing you the amount and character of the business prior to December? A. Yes sir. . . . He said they were working on the statement. . . . Q. When did you first find out what the business had been in money for the seven months from May until December, 1920? . . . A. In January. . . . It may have been around about the middle part. . . . Q. You made no demand (at that time) . . . for the return of your money,

did you? A. No. Q. You went on from month to month taking money from them as a salary, didn't you? A. I did. Q. And then along toward the middle of the year, you demanded an increase in salary, didn't you? A. According to the agreement that I had, yes. . . . I have owned a garage for a year and a half, had charge of a fleet of automobile trucks . . . for approximately a year, been buying machines and selling the same.'' Plaintiff further testified that one of the conditions of his purchase of the stock was that he was to be given employment by the defendant at $150 a month for the first six months, $200 a month for the next six months and $250 a month thereafter.

Jackson testified: ''I went into this statement with Mr. Nunemacher in a rather thorough-going way from the angle of profit and loss, and I endeavored to show him, as I believed, that this business was a good profitable business in general, and in particular that certain lines that the company was operating were very good lines. . . . The company was operating stage lines between Oakland and Vallejo, at the time, and Oakland and Sacramento, and there were also other lines that were in their inception, and I endeavored to show Mr. Nunemacher that those lines, . . . and probably other lines, represented the foundation of a good business in my judgment. . . . I endeavored to convince Mr. Nunemacher inferentially that this was a profitable business as it operated following this report and the information that I had gathered by word of mouth from Mr. Klatt and Mr. Hanford. . . . I gained from this statement and from what I had observed of the business as it was being conducted and from what Mr. Klatt and Mr. Hanford had told me I reasoned with Mr. Nunemacher that it was a good profitable business and one that Mr. Nunemacher would be justified in putting his money in. I tried to sell him the stock. . . . Q. Did you at any time state to Mr. Nunemacher substantially that the profits of this company had increased proportionately to the profits shown on that statement of May 31st, 1920? A. I used no such language to Mr. Nunemacher. . . . I stated things exactly in that first statement, that the volume of business had increased, as I understood it, steadily from the beginning and as represented in this exhibit here, and after that period represented in here. Q. You did not use the word 'profit'? A. No, but that the

business was profitable.   Q. You told him that?   A. Yes, sir. Q. You believed that to be a fact?   A. Yes, I did.''

Excepting statements clearly shown to be true, the only representation proved without substantial conflict is Jackson's statement that ''the business was profitable.''  Plaintiff's testimony shows that he was qualified by experience to make a reasonable estimate of the value of the defendant's business and property, and he had three months in which to investigate its affairs.   He knew that the only statement of defendant's receipts and expenses was that of June 20th and that a later statement, covering the period from June 1 to December 31, 1920, was being prepared.   When, according to the plaintiff's testimony, Jackson said: ''We are making money as you can see from this statement,'' referring to the report of June 20th, and truthfully said that the volume of business was steadily increasing, but that no statement of the condition of the business had been prepared since the date of that report, it is a fair inference that the plaintiff understood the further statement that the business was profitable to be a mere estimate or opinion, based on the facts stated to him by Jackson.   ''What amounts to an expression of opinion as compared with a positive statement of facts depends upon all the circumstances of the case, and is a question for the trial court.''   (*French* v. *Freeman*, 191 Cal. 579, 585 [217 Pac. 515, 517].)   [1]   Since plaintiff was put in possession of the facts upon which Jackson ''endeavored to convince Mr. Nunemacher inferentially that this was a profitable business'' and upon which Jackson based the opinion that the business was profitable, the statement of such opinion ''is not a sufficient basis to support a charge of fraudulent misrepresentation.''   (*Rheingans* v. *Smith*, 161 Cal. 362, 365 [Ann. Cas. 1913B, 1140, 119 Pac. 494].)

[2]   It does not appear that the representation that the business was profitable was made in bad faith, but rather that Jackson and the defendant's officers did not know that it was being conducted at a loss until the completion of the audit made in January, 1921.   It is improbable that the books of any large business concern at all times immediately reflect, without an audit thereof, its current profits or losses, but such matters are ascertained by occasional or regular comprehensive audits into which factors other than mere receipts and expenditures enter.   During a particular time

or season there may be unusually large receipts or expenses which must be distributed over a longer period in order to determine whether or not a profit has been made. A statement that a particular business is profitable, even though untrue, is not necessarily fraudulent. It is true that "the positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true," constitutes actual fraud. (Civ. Code, sec. 1572, subd. 2.) But in this case it reasonably appears that the representation in question was warranted by the information contained in the report of June 20th and the fact that the volume of business was steadily increasing. "Where a man makes a representation in the reasonable belief that it is true, fraud will not be imputed to him if it afterward be shown to be untrue, but there must be reasonable grounds for his belief." (*Maxson* v. *Llewelyn,* 122 Cal. 195, 198 [54 Pac. 732]; *Otis* v. *Zeiss,* 175 Cal. 192, 194 [165 Pac. 524]; *Nash* v. *Rosesteel,* 7 Cal. App. 504, 509 [94 Pac. 850]; *Hodgkins* v. *Dunham,* 10 Cal. App. 690, 706 [103 Pac. 351]; *Meeker* v. *Cross,* 59 Cal. App. 512, 516 [211 Pac. 229].) The court found that "any and all representations or statements made by defendant to plaintiff at said time were made in the belief by defendant that same were true in each and every particular, and said belief that same were true in each and every particular was fully justified by the facts and circumstances as they existed and were known to defendant at the time such representations or statements were made." This finding is fully supported by the evidence.

[3] The first cause of action is for damages in the difference between the amount which plaintiff paid for the stock and its value at the time of the purchase thereof. The complaint alleges that at that time the stock "was not worth the sum of ten thousand dollars, or any sum in excess of two thousand five hundred dollars." The answer denies this allegation. The court found that "it is not true that at the time of purchase by the plaintiff of said stock that same was not worth the sum of ten thousand ($10,000) or any sum in excess of two thousand five hundred ($2,500) dollars." If it is not true that the stock was not worth $10,000, then it is true that it was worth $10,000. A witness for defendant testified that the stock was worth "not less than $100 a

share" December 31, 1920. Since the amount of plaintiff's damages is alleged to be the difference between the value of the stock and the sum paid therefor, it follows that if there is no such difference there is no right of recovery. "It is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action." (*Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 571 [42 L. R. A. (N. S.) 125, 126 Pac. 351].) The court found that the plaintiff sold the stock December 12, 1921, for $4,371, "which was the highest price obtainable at that time." The fact that the stock was worth less than par at that time does not show, under the circumstances of this case, that it was worth less than par nearly a year prior thereto. (*Wegerer* v. *Jordan,* 10 Cal. App. 362, 365 [101 Pac. 1066].)

While the evidence is conflicting in many respects, it is clearly sufficient to support the findings and, therefore, the judgment cannot be disturbed.

The judgment is affirmed in its entirety.

Shields, J., *pro tem.,* and Plummer, J., concurred.