[Civ. No. 8521. First Appellate District, Division Two.—May 9, 1933.]

HERMAN GUTTERMAN, Appellant, v. JOHN VICTOR GALLY et al., Respondents.

Arnold C. Lackenbach and Lander W. Hodges for Appellant.

Edward C. Levey, Marvin E. Lewis, Nat Schmulowitz, George B. Harris, Gavin McNab, and Schmulowitz, Wyman, Aikins & Brune for Respondents.

SPENCE, J.—Plaintiff sought to recover damages alleged to have been sustained as the result of a conspiracy to defraud on the part of defendants. Defendants' demurrers to plaintiff's second amended complaint were sustained and a motion to strike was granted. Plaintiff was granted leave to amend, but declined to do so and judgment of dismissal was entered. From this judgment plaintiff appeals.

The second amended complaint covers twenty-five pages of the transcript and a similar amount of space is covered by the demurrers and motion to strike. We do not believe it necessary, however, to set forth in detail all of the contents of these pleadings. The complaint relates the alleged circumstances surrounding plaintiff's speculations in a mining stock during the speculative era of 1928. Among the defendants were certain brokers, the owner of a certain finan-

cial weekly and the owner of a certain financial service which issued trading recommendations and special bulletins. Plaintiff was a subscriber to said financial weekly and said financial service. Plaintiff alleged that certain of the defendants acquired an option on 200,000 shares of the class A preferred stock of Central Eureka Mining Company at $1.25 per share and conspired to sell said stock by maintaining an artificial market therefor and to divide the proceeds; that they listed said stock on the San Francisco Mining Exchange in order to induce plaintiff and others to believe that the current price on said exchange "had a reasonable and customary relation to the intrinsic value of such preferred stock" and for a period of time defendants created and maintained an "artificial market . . . thereby preventing the current market price of said preferred stock from bearing any relation whatever to the intrinsic value of said preferred stock"; that the opening sales were at a price of $2.50 per share and thereafter defendants caused the current market price to increase from time to time until it reached $6.37½ on September 21, 1928; that thereafter defendants withdrew from the market and permitted said stock to drop to $2 per share; that thereafter said stock continued to further decline and "is now worthless"; that defendants concealed from plaintiff the fact "that such price did not bear any relation whatever to the actual value of said preferred stock"; that defendants caused articles to be published in said financial weekly concerning the mining company which articles recommended the purchase of said stock at the current market price and "represented that said price was fair and reasonable and had a reasonable and customary relation to the intrinsic value of said preferred stock"; that defendants intended thereby to deceive plaintiff into believing that their advice was disinterested and that the current market price was "a fair price determined by the factors ordinarily affecting the market"; that defendants knew that said representations were false and fraudulent; that defendants concealed from plaintiff the fact that said current market price was "fraudulently fixed" and that all of said stock "except that currently sold" was owned by or under option to defendants; that defendants caused trading recommendations and special bulletins to be issued by said financial service recommending

that said stock be purchased and held, representing therein "that said market price was a fair price and represented the intrinsic value of said preferred stock" and further represented that said current market price was "low" and was "a bargain".

Plaintiff further alleged that he had "no knowledge whatever . . . on which to determine whether or not the price of its preferred stock recommended by defendants represented the fair value thereof"; that he believed the representations of defendants and relying thereon, he made the following purchases of said stock at the "current market prices prevailing": August 14, 1928, 500 shares at $3.70 per share; August 21, 1928, 2,000 shares at $3.95 per share, and September 5, 1928, 1,000 shares at $4.60 per share. It also appears from the allegations of the complaint that plaintiff thereafter made the following sales of said stock at the "current market price": September 19, 1928, 500 shares at $5.30 per share, and "several days thereafter", 100 shares at $5.92 per share. The prayer of the complaint was for the entire purchase price of all of the shares less the amount received by plaintiff through the profitable sales of some of the stock which he had purchased.

The demurrers were both general and special and the complaint was attacked for uncertainty in numerous particulars. As plaintiff declined to amend after said demurrers were sustained, it is well settled that he must stand upon his pleading and must show that the complaint was not subject to any of the objections specified in the demurrers. (*Aalwyn* v. *Cobe*, 168 Cal. 165 [142 Pac. 79]; *Robinson* v. *Godfrey*, 78 Cal. App. 284 [248 Pac. 268].) We shall not therefore discuss the many grounds of alleged uncertainty of the complaint, but will confine the discussion to one deficiency in the pleading which in our opinion made the alleged first cause of action stated in the complaint subject to defendants' attack both by general demurrer and by special demurrer.

We may assume without deciding that the alleged misrepresentations set forth in the complaint might be sufficient under certain circumstances to be the basis of an action for damages for fraud, but other allegations would be required in order to show that plaintiff in fact had a cause of action. "It is fundamental, of course, that no

matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action." (*Barron Estate Co.* v. *Woodruff Co.*, 163 Cal. 561, 571 [126 Pac. 351, 355, 42 L. R. A. (N. S.) 125].) In other words, in an action *for damages* based upon fraud, the allegations of the complaint must show that plaintiff has thereby suffered damage and no basis for damage could be shown in the present case in the absence of an allegation showing the actual value of the stock purchased. (12 Cal. Jur. 814, 815.) We search in vain for an allegation in the complaint showing the actual value of said stock. It is quite obvious that the figures in the complaint represented the "current market price" on the stock exchange as plaintiff himself alleges that these figures bore no relation to the "intrinsic value" of the stock. In fact he alleges that defendants prevented said "current market price of said preferred stock from bearing any relation whatever to the intrinsic value of said preferred stock". The complaint is filled with such terms as "actual value", "intrinsic value", "fair price" and the like in the allegations with reference to the alleged misrepresentations, but no attempt is made to allege what was the "value", "actual value", "market value", "intrinsic value" or "fair value" of said stock at any time. Experience has shown that the "current market price" of securities on the stock exchange is not always the same as the "actual value" or the "market value" thereof and it has been held that while the "current market price" may be some evidence of the "actual value" or "market value", it is only evidence thereof. (*Estate of Spitly,* 124 Cal. App. 642 [13 Pac. (2d) 385].) It is clear from plaintiff's allegations that the "current market price" fluctuated, but it further appears that plaintiff sold some stock at a profit. Had he held the stock sold and disposed of the same a little later at the alleged subsequent "current market price" of $6.37½ per share his profits on said sales would have been even greater. It also appears that he might have sold all of his stock at a substantial profit, but we are not called upon to engage in speculation as to what plaintiff might have done. He failed to allege the "actual value" or "market value" of said stock at any time and if that value exceeded the "current market price" which plaintiff paid

for said stock then he suffered no damage. In the absence of allegations with respect thereto, plaintiff has failed to show that the alleged misrepresentations as to value were false or that any alleged misrepresentation or concealment of any kind resulted in damage. We are therefore of the opinion that the first count of said complaint was fatally defective and that it was subject to the attack made upon it both by the general and special demurrers. Plaintiff takes the position that his cause of action did not require allegations of the "actual value" of the stock and that "the only values in question are the prices listed on the exchange". With this position we cannot agree.

■ Before passing from the consideration of this point a word should be said regarding the allegation that said stock "is now worthless". This allegation might be construed to mean that the stock had no value of any kind at the time to which the allegation refers. It is found in the second amended complaint filed in 1931 while the transaction occurred in 1928. We believe, however, that an allegation of value relating to the time of the filing of the second amended complaint or even to the time of the filing of the action is insufficient. (See *Garstang* v. *Skinner,* 165 Cal. 721 [134 Pac. 329]; *Nunemacher* v. *Western Motor etc. Co.,* 82 Cal. App. 233 [255 Pac. 266]; *Neher* v. *Hansen,* 12 Cal. App. 370 [107 Pac. 565]; *Wegerer* v. *Jordan,* 10 Cal. App. 362 [101 Pac. 1066].)

■ We now turn to a consideration of plaintiff's alleged second cause of action. After demurrers had twice been sustained to complaints which had contained but one cause of action for damages for fraud, plaintiff filed his second amended complaint again setting forth his alleged cause of action for such damages and adding an alleged second cause of action. Plaintiff incorporated by reference therein the first six paragraphs of the first alleged cause of action and then added the usual allegations of an action for money had· and received. In addition to the demurrers interposed thereto defendants made a motion to strike the alleged second cause of action, which motion was granted. Plaintiff contends that the trial court erred in granting said motion and states that "the second cause of action is a count in *assumpsit* based upon the same transaction". We may first note that nowhere in the first cause of action does it appear that

plaintiff had purchased any stock from defendants or that any of the defendants had received any of the money paid by plaintiff for said stock; but even if it had so appeared from the averments in the first alleged cause of action we are still of the opinion that the trial court properly granted the motion to strike out said alleged second cause of action.

 The remedies available to one claiming to have been defrauded in a transaction with another have been frequently discussed. (*Bancroft* v. *Woodward*, 183 Cal. 99 [190 Pac. 445]; *Conlin* v. *Studebaker Bros.*, 175 Cal. 395 [165 Pac. 1009]; *Hallidie* v. *Enginger*, 175 Cal. 505 [166 Pac. 1]; *Paolini* v. *Sulprizio*, 201 Cal. 683 [258 Pac. 380]; *Stone* v. *Superior Court*, 214 Cal. 272 [4 Pac. (2d) 777, 79 A. L. R. 743]; *Firpo* v. *Pacific Mutual Life Ins. Co.*, 80 Cal. App. 122 [251 Pac. 657]; *Fitzhugh* v. *University Realty Co.*, 46 Cal. App. 198 [188 Pac. 1023]; *Hammond* v. *Ocean Shore Development Co.*, 22 Cal. App. 167 [133 Pac. 978]; 12 Cal. Jur., p. 787.) However, our attention has not been called to a single case in which a plaintiff, after an unsuccessful effort to state a cause of action *for damages for fraud*, has subsequently been permitted to add by way of amendment an alleged cause of action for money had and received. These remedies are inconsistent. When plaintiff brings the first type of action he elects to affirm, retain the proceeds of the transaction and sue for damages. On the other hand, the second type of action is based upon disaffirmance and the plaintiff in such action asks for the return of the money paid. The rule is stated in 12 California Jurisprudence, page 787, as follows: "While one who has been defrauded may elect to rescind the contract or to affirm it and claim damages, he cannot do both at the same time. Consequently, if he affirms and brings an action for damages, he thereby loses his right to disaffirm." Even where it is recognized that there are exceptions to the above rule it has been stated that " . . . a party induced to enter into a transaction by fraud, affirms the transaction when he brings an action for damages and because of the affirmance loses any right to disaffirm subsequently. . . . " (*Bancroft* v. *Woodward*, 183 Cal. 99, at p. 101 [190 Pac. 445, 446].) We are therefore of the opinion that plaintiff's election to affirm and sue for alleged damages constituted a waiver of

any right to subsequently disaffirm and sue for the money paid.

From what has been said it follows that the motion to strike the alleged second cause of action was properly granted, that the demurrers to the alleged first cause of action were properly sustained and that there was no error in entering a judgment of dismissal after plaintiff declined to amend.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 7, 1933.