[Civ. No. 6345.   Fourth Dist.   Dec. 13, 1961.]

HAROLD G. EDWARDS, Plaintiff and Respondent, v. BERNAL E. LANG et al., Defendants and Appellants.

Eric A. Rose for Defendants and Appellants.

Carpenter & Rutter for Plaintiff and Respondent.

COUGHLIN, J.—The issues raised on this appeal arise out of an action upon a complaint to foreclose a chattel mortgage, and for a deficiency judgment on a promissory note secured thereby; upon an answer setting up a defense of fraud; upon a cross-complaint for rescission based on that fraud; and upon an answer to the cross-complaint denying the fraud and alleging several independent defenses to the alleged rescission.

At the time of the execution of the note and mortgage in question, the plaintiff, who is the respondent herein, owned and operated a woodworking shop and business devoted to the manufacture of push-button spice racks, which he sold exclusively to one distributor. Previously, he had purchased this business, together with its good will, certain fixtures, and a patent which he believed gave him some protection in the

manufacture of these spice racks, for the sum of $6,000, and added other equipment and machinery for which he paid $3,000.

The defendants, who are the appellants herein, became interested in acquiring this business; made at least two visits to the plaintiff's shop; talked with him concerning the business, and were shown his books; were advised that the plaintiff sold exclusively to one distributor; had a conference with the agent of that distributor and were promised a purchase order for 2,000 spice racks; and, thereafter, told the plaintiff that they wished to purchase his business. On this latter date, after the defendants indicated their intention to purchase the business in question, the plaintiff showed them a certified copy of a patent issued to his predecessor; stated that this was his patent; advised that it had been assigned to him by the patentee; and said that it "covered" the spice racks. Thereupon, the plaintiff sold the defendants his business, including fixtures, equipment, stock, good will, and U. S. Design Patent No. 175189, for the sum of $6,750, payable $1,500 in cash and $5,250 in installments, as evidenced by a promissory note secured by a chattel mortgage upon the fixtures, equipment and stock.

The defendants went into possession of the business; received the purchase order for 2,000 spice racks from the aforesaid exclusive distributor; were unable to produce spice racks as cheaply as the plaintiff had produced them and, as a consequence, were unable to deliver them at the price which the sole distributor was willing to pay therefor; caused the cancellation of the purchase order in question, which resulted in the removal of the spice racks from the distributor's line and out of its catalog; ceased production; and failed to meet their obligations on the promissory note which they had given to the plaintiff. Thereupon the plaintiff brought this action to foreclose on the chattel mortgage; for a deficiency judgment on the note secured thereby in the event it was not satisfied through such foreclosure; and for attorney's fees as provided in the note.

The defendants, in their amended answer setting up the defense of fraud, and in their cross-complaint alleging the same fraud as the basis for rescission, claimed that the plaintiff had procured the note and mortgage from them by false representations respecting the patent in question, the cost of producing the spice racks, and the price at which the distributor would purchase them. The court found against all of these

allegations. On appeal, the defendants limit their consideration to the alleged misrepresentations concerning the patent. A clear analysis of the allegations and findings on this subject discloses that the plaintiff did not make the alleged false representation upon which the defendants relied as a defense, and as a basis for their rescission.[1] In substance, the defendants state that they believed they were getting a patent on the working mechanism of the spice racks they were to produce, i.e., the push-button device; that this patent would protect them in the exclusive manufacture of these racks; and that this belief was based on representations made to them by the plaintiff. In fact, the plaintiff made no such representations, although he did say that the patent he owned, which was a design patent rather than a structural patent, "covered" the spice racks in question. This statement was untrue. However,

---

[1]The amended answer alleged:

1. ". . . that plaintiff represented to defendants that as part of the assets of said business there was then in existence a patent in the United States Patent Office which permitted plaintiff to use and sell to the exclusion of all others, the structural and working parts of a spice rack, that plaintiff had the exclusive right to manufacture and sell said spice rack, including the structural details thereof under the terms of a United States Utility Patent protecting and covering a push button mechanism for the ejection of spice boxes. . . .''

2. ". . . that all of these representations were false and untrue, were known by the plaintiff to be false and untrue at the time they were made, were made by the plaintiff for the purpose that defendants rely thereon, and defendants did rely thereon and executed upon such reliance the documents hereinabove referred to, and in addition thereto, paid to plaintiff the sum of $1,500.00 in cash.''

The court found these allegations to be untrue. There is substantial evidence in support of this finding. No contention is made to the contrary. However, the court also found that:

1. "The Plaintiff told the Defendants that he had *a* patent which was a part of the assets of the business and which would be sold with said assets.'' (Italics added.)

This was not a false representation as the plaintiff did have *a* patent which he sold and transferred to the defendants.

2. "On June 5, 1958 the Defendants announced that they wished to purchase the business and close the deal. On said date and prior to the consummation of any Contract . . . the Defendants had a further conference with the Plaintiff on the details of the business. At said time and during said conversation the Plaintiff showed to the Defendants a certified copy of Patent No. 175189 issued to WALTER CLIFFORD PIERCE, JR. (Defendants' EXHIBIT 'C') and stated to Defendants merely that this was his Patent and that it 'covered' the spice racks. The Plaintiff told the Defendants that he was the owner of the Patent by virtue of an Assignment from WALTER CLIFFORD PIERCE, JR., the original Patentee.''

3. "The Plaintiff honestly believed in good faith that the Patent gave him some protection in the manufacture and production of the said spice racks but had never drawn any conclusion as to the extent of said protection.''

the court found that it was made in good faith, under the belief, warranted by the information at hand, that it was true.

The court also found that the defendants could not place the plaintiff *in statu quo* in that they had permitted the business to collapse, being unable to produce the spice racks at a profitable figure, and caused the loss of the sole distributor who withdrew the subject product from the market. The existence of this outlet was a valuable good-will item and its loss depreciated the value of the business which the plaintiff had transferred to the defendants. The evidence adequately supports the foregoing finding of the court. It should be noted, as shown by the undisputed evidence, that the loss of the distributorship in question and the resulting depreciation in the value of the business was attributable solely to the action of the defendants; that the nonexistence of a patent on the spice racks manufactured by them was not the cause of their business failure; and that no competitor attempted to produce a spice rack of similar design or working mechanism.

---

4. ''The belief of the Plaintiff that he had some protection by ·virtue of the said patient was bona fide and not negligent and his representation that the patent 'covered' the said spice racks produced was made in good faith and was not made fraudulently or negligently. Neither the Plaintiff nor the Defendants had any special knowledge, legal or otherwise, of the legal *a*ffect of the patent or the extent of the protection offered by it.''

5. ''In fact said patent was a 'Design Patent.' It did not in fact protect any of the functional aspects of the said spice racks produced by the Plaintiff, no*w* did it give the Plaintiff or any holder an exclusive right to manufacture and use the structural working parts of said spice rack. The said patent did not protect the design of any of the said spice racks produced because that design was different from the design shown in the patent. The said patent, however, was not worthless as it did protect the design shown in the patent and protected thereby.''

6. ''. . . the only incorrect statement made by the Plaintiff to the Defendants was the statement that the patent previously referred to 'covered' the spice racks . . . the Plaintiff did not make any representations to the Defendants that the patent was a United States Utility Patent, or that it protected the structural and working parts of the said spice rack, or that it gave the Defendants or would give the Defendants the exclusive right to produce the said spice racks or the structural and working parts thereof or either of these things, and the Court further finds that the Plaintiff made no representations to the Defendants as to the extent of the coverage or protection afforded by the patent and that the statement made by the Plaintiff was made in good faith by him and that he did have reasonable ground for believing it to be true, and further that, in the light of all the facts and circumstances, the Plaintiff's assertion was not made in a manner unwarranted by the information that he possessed.''

7. ''The Plaintiff did not know at the time he made the statement above referred to to the Defendants that the said statement was incorrect.''

It appears, therefore, that the defendants do not have the right to rescind, regardless of the status of the findings and the evidence on the issue of fraud. Under these circumstances, they may advance the plaintiff's alleged false representation as a defense to his foreclosure and deficiency judgment action only by way of offset through a counter-claim or cross-complaint for damages. (*Paolini* v. *Sulprizio,* 201 Cal. 683, 685-687 [258 P. 380].) Assuming that such a counter-claim or cross-complaint would lie on account of the innocent misrepresentation found by the court, and interpreting the pleadings in this case most favorably to the defendants, their answer and cross-complaint fail to sustain an offsetting judgment for damages because (1) there is no pleading of general damages under the applicable rule, i.e., section 3343 of the Civil Code, and (2) the findings of the court negative the existence of any special damages.

Even though the foregoing state of the case is determinative of the principal issues on this appeal, it has not been considered by the parties hereto and need not be the sole basis for our decision in the premises.

The defendants, in their opening brief on appeal, adopt a different defensive theory than that presented to the trial court; claim that the findings made by the court require a conclusion that they executed the note and mortgage under a mistake of fact; make no contention respecting a claim of fraud, although in their answer they alleged that the note and mortgage were executed in reliance upon a false representation intentionally made by the plaintiff; but urge a reversal of the judgment under the mistake of fact theory. However, in their oral argument the defendants urged that the finding of an innocent misrepresentation by the plaintiff supported their pleaded defense of fraud, and required a judgment in their favor.

The plaintiff contends that the defendants are barred from now presenting the mistake of fact defense because it was not presented to the trial court either through the pleadings or by acquiescence of the parties, and is a new theory, raising new issues and involving contested questions of fact on mixed question of law and fact. This position is supported by the cases which they cite, i.e., *Barrera* v. *De La Torre,* 48 Cal.2d 166 [308 P.2d 724]; *Marshall* v. *Parkes,* 181 Cal.App.2d 650, 655 [5 Cal.Rptr. 657]; *Winberry* v. *Lopez,* 178 Cal.App.2d 672, 690 [3 Cal.Rptr. 245]; *DuPre* v. *Boqumill,* 173 Cal.

App.2d 406, 414 [343 P.2d 415]; *Clark* v. *Redlich*, 147 Cal. App.2d 500, 505 [305 P.2d 239]; *Patterson* v. *Davis*, 121 Cal. App.2d 152, 160 [262 P.2d 601].

A mistake of fact may be urged as a defense to an action upon a contract only if the mistake is material to the contract. (Civ. Code, § 1577; *M. F. Kemper Const. Co.* v. *City of Los Angeles*, 37 Cal.2d 696, 701 [235 P.2d 7]; *Reid* v. *Landon*, 166 Cal.App.2d 476, 483 [333 P.2d 432].)

Even though the trial court found that the plaintiff innocently misrepresented that the patent owned by him "covered" the spice racks he manufactured, which might be the basis for a mistaken belief by the defendants as to the fact represented (*Brown* v. *Klein*, 89 Cal.App. 153, 156 [264 P. 496]; *Lombardi* v. *Sinanides*, 71 Cal.App. 272, 280 [235 P. 455]; *Peardon* v. *Markley*, 50 Cal.App. 257, 259-260 [195 P. 70]), there is neither pleading, proof nor finding that this mistake was material to the contract. The defendants allege and claim that the fact upon which they relied arose from a representation that the patent owned by the plaintiff protected him in the exclusive manufacture of the push-button mechanism of his spice racks; not merely that the patent he owned, which was only a design patent, "covered" these racks. The materiality to the contract of the mistake in fact that the patent owned by the plaintiff, i.e., the design patent, "covered" the spice racks, was neither claimed, alleged, proven nor found. The court found untrue the allegations in the defendants' answer and cross-complaint that they relied upon the alleged false representations set forth therein, i.e, those respecting the working mechanism patent. This finding is adequately supported by evidence which discloses that they had decided to purchase the plaintiff's business before he made the alleged misrepresentations; and also that they exhibited no interest in the provisions of the patent; when it was shown to them they merely glanced at it from a distance; did not read it; and made no investigation concerning its contents until after they had failed in business. Under these circumstances, it may not be said that the evidence establishes as a matter of law that any mistake of fact based on the plaintiff's representation that the patent he owned covered his spice racks was material to the contract in question. The defendants' contention to the contrary is based on their conclusions from and their interpretation of the evidence, which are controversial and, in the light of the evidence before us, are not determinative of the issue on appeal.

The defendants' contention, advanced for the first time on appeal in the course of their oral argument, that the innocent misrepresentation finding heretofore referred to required the court to conclude that their defense of fraud should be sustained, also is without merit. Even though it be assumed that this finding was within the issues presented by the pleadings, and did not constitute a material variance therefrom, there is no finding that the defendants relied upon the innocent misrepresentation found to have been made and, as noted, the evidence does not establish this fact as a matter of law.

A misrepresentation is not actionable unless it has been relied upon by the party complaining. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 422 [159 P.2d 958].)

Any relief which the defendants seek under their cross-complaint for rescission is barred by their self-imposed inability to place the plaintiff *in statu quo*, i.e., in substantially the same position he would have been if the sale had not taken place. (Civ. Code, § 1691, subd. 2; *M. F. Kemper Constr. Co.* v. *City of Los Angeles, supra*, 37 Cal.2d 696, 701; *Conlin* v. *Studebaker Brothers*, 175 Cal. 395, 398 [165 P. 1009].) Under these circumstances, as heretofore noted, the defendants could not set up the innocent misrepresentation in question as a defense to the instant action other than as an offset through a claim for damages which was neither pleaded, proven nor found.

Moreover, the court found that the innocent misrepresentation made by the plaintiff was not made fraudulently or negligently, but in good faith, and upon reasonable grounds for believing it to be true. Under these circumstances it was not actionable. (Civ. Code, § 1572, subds. 1, 2; *Maxson* v. *Llewelyn*, 122 Cal. 195, 198 [54 P. 732]; *Graham* v. *Ellmore*, 135 Cal.App. 129, 131 [26 P.2d 696]; *Nunemacher* v. *Western Motor etc. Co.*, 82 Cal.App. 233, 239 [255 P. 266]; *Nash* v. *Rosesteel*, 7 Cal.App. 504, 509 [94 P. 850].)

The defendants cite and rely upon the decisions in *Gagne* v. *Bertran*, 43 Cal.2d 481, 487 [275 P.2d 15]; *Shearer* v. *Cooper*, 21 Cal.2d 695, 703 [134 P.2d 764], and similar cases, which apply the rule that misrepresentations not warranted by information in possession of the person making them may be actionable even though he did not know they were false. Obviously, these decisions are not applicable to the facts at hand.

The defendants contend that the court erred in awarding the plaintiff a judgment for $750 attorney's fees.

The note upon which he sued provided for the payment of "such sum as the Court may adjudge as attorney's fees." In his complaint he alleged he had employed an attorney for the purpose of enforcing payment on the note; that the sum of $525 "is the amount of attorneys fees for the collection of said note"; and that "said sum is a reasonable amount to be allowed the plaintiff for the fees of his attorney." The defendants denied these allegations. It is claimed that any award in excess of $525 was error. This contention is correct. The issue on the question of attorney's fees was the issue raised by the allegations in the complaint and the defendants' denial thereof. The parties tried the case within the confines of this issue. The judgment likewise must be confined; is erroneous to the extent that the award of attorney's fees therein is in excess of the amount which the complaint alleged is payable; and must be modified accordingly. (*Meisner* v. *McIntosh*, 205 Cal. 11, 12-14 [269 P. 612]; *Kerry* v. *Pacific Marine Co.*, 121 Cal. 564, 572-573 [54 P. 89, 66 Am.St.Rep. 65]; *Frost* v. *Mighetto*, 22 Cal.App.2d 612, 617 [71 P.2d 932]; *Brown* v. *Ball*, 123 Cal.App. 758, 768 [12 P.2d 28].) The defendants also claim that the judgment for attorney's fees is in error because there is no finding of fact to support the same. However, under the heading "Conclusions of Law" there appears the following:

"The Plaintiff is entitled to Judgment against the Defendants for the reasonable amount to be allowed the Plaintiff for the fees of his Attorneys as provided in said Note which sum this Court finds to be in the sum of *$750.00.*"

Clearly this is a finding of fact, and the circumstance that it is intermingled with conclusions of law does not affect its true status. (*Linberg* v. *Stanto*, 211 Cal. 771, 776 [297 P. 9, 75 A.L.R. 555]; *Petersen* v. *Cloverdale Egg Farms*, 161 Cal. App.2d 792, 797 [327 P.2d 127].)

The defendants further contend that the judgment also is erroneous insofar as it purports to authorize the entry of a deficiency against them. This contention is based on an alleged noncompliance with that part of section 726 of the Code of Civil Procedure which provides that:

"The decree for the foreclosure of a mortgage . . . unless judgment for any deficiency . . . is waived by the judgment creditor, shall determine the personal liability of any defendant for the payment of the debt secured by such mortgage . . . and shall name such defendants against whom a deficiency judgment may be ordered. . . . In the event that a deficiency

is not waived and it is decreed that any defendant is personally liable for such debt, then upon application of the plaintiff . . . , the court shall render a money judgment against said defendant or defendants. . . .''

It is claimed that the judgment at hand does not decree that the defendants are personally liable for the payment of the debt secured by the chattel mortgage being foreclosed. Although the intent of the judgment is not expressed in the language of the code section, it is apparent therefrom that the personal liability of the defendants for the debt in question is decreed thereby. Pertinent parts of the judgment are as follows:

(1) ''It Is Hereby Ordered, Adjudged and Decreed: 1) That the Plaintiff do have and recover Judgment against the Defendants and each of them in the amount of $5,250.00 . . .'' and

(2) ''If the proceeds of said sale are insufficient to pay the above amounts found due to the Plaintiff, with interest thereon as aforesaid, a further hearing in this cause shall be had upon application of the Plaintiff filed subsequent to the foreclosure sale as provided for by law, for the purpose of establishing the amount of the deficiency Judgment to be entered against Defendants and each of them, and the Court hereby retains jurisdiction of this matter for that purpose.''

The defendants were the original makers of the note in question. No reason appears from the findings, conclusions of law or the judgment why they are not personally liable for the debt evidenced thereby. To comply with the provisions of section 726 it is not necessary that the judgment specifically state that the defendants, naming them, are personally liable for the amount of the note which the court found unpaid. (*Leviston* v. *Swan*, 33 Cal. 480, 483; *MacNeil* v. *Ward*, 2 Cal. Unrep. 174; *Ewing* v. *Richvale Land Co.*, 37 Cal. App. 53, 59 [172 P. 645]; *cf. Irvine* v. *Mazurette*, 115 Cal. App.2d 612 [252 P.2d 362].) Furthermore, it appears from the record before us that the judgment as originally made and entered, subsequently, upon proper notice, was amended *nunc pro tunc* so as to expressly declare that the defendants, naming them, were personally liable for the total debt, setting forth the amount thereof, secured by the subject mortgage. It has been held that such an amendment involves merely the correction of a clerical error; is proper; cures the technical difficulty appearing in the judgment as originally made and entered; and becomes substituted for that judgment

16

as though originally entered. (*Leviston* v. *Swan, supra,* 33 Cal. 480, 484; *Citizens Nat. Trust etc. Bank* v. *Holton,* 210 Cal. 44, 46 [290 P. 447] ; *George* v. *Bekins Van & Storage Co.,* 83 Cal.App.2d 478, 481 [189 P.2d 301] ; *cf. Boust* v. *Superior Court,* 162 Cal. 343 [122 P. 956].)

The judgment is modified by reducing the amount of attorney's fees as awarded from $750 to $525, and as modified, is affirmed. Each party to bear his or their own costs on appeal.

Griffin, P. J., and Shepard, J., concurred.