In re **NORTHERN CALIFORNIA HOMES AND GARDENS, INC.,** Debtors.

**NORTHERN CALIFORNIA HOMES AND GARDENS, INC.,** Appellant,

v.

**Jonas E. SCHREIDER,** Trustee of the **Schreider Family Trust,** Appellee.

Bankruptcy No. 4–85–03502 W.

BAP No. NC 87–1058 MoJV.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on May 20, 1988.

Decided Sept. 22, 1988.

W. Michael Celestre, Graves, Allen, Cornelius & Celestre, Oakland, Cal., for appellant.

Harold Turner, Walnut Creek, Cal., for appellee.

Before MOOREMAN, JONES and VOLINN, Bankruptcy Judges.

## OPINION

MOOREMAN, Chief Judge:

By this appeal the debtor seeks to set aside the bankruptcy court's order denying the debtor's objection to the appellee's claim.

## FACTS

Northern California Homes and Gardens, Inc., (debtor), filed for relief under Chapter 11 of the Bankruptcy Code on October 2, 1985. On November 7, 1985, Dr. Schreider,

as trustee of the Schreider Family Trust, (appellee), filed a proof of claim in the amount of $240,186.56. The asserted claim arose out of a note and deed of trust executed by the debtor for the purchase of a certain "Crest Ave. Property" (the property). The debtor objected to the amount of the claim and claimed a set-off of $70,000, alleging that Dr. and Mrs. Schreider as well as their agents had made certain misrepresentations in connection with the debtor's purchase of the property.

The underlying facts surrounding the debtor's purchase of the property are set forth as follows. In January 1979, the Schreiders listed the property for sale with Mueller and Young Realtors. John Holm, a realtor at Mueller and Young, was principally responsible for marketing the 2.55 acre parcel. In connection with the marketing of the property, Mr. Holm prepared a "property prospectus" which listed the property as containing not only the Schreiders' home and accompanying lot, but also two additional building sites. Apparently, the representation that the property could be subdivided into three lots was based on the zoning requirement that each lot contain at least 20,000 square feet. The prospectus listed the asking price at $295,000.

In the spring of 1979, Peter and June Chung, President, Vice President and Shareholders of the debtor, contacted a real estate agent (Ms. Williams). The Chung's told Ms. Williams that they were "seeking a house on a piece of property that could be subdivided." Ms. Williams located the subject property from an "M.L.S. listing" and based on the listing informed the Chungs that the property could be subdivided into three lots.[1]

In July 1979, "Ms. Williams prepared an offer on behalf of [the debtor]" to purchase the property for $285,000, which would be "carried by the seller/[Schreiders]." The debtor's offer also provided that the offer was made:

subject to [debtor's] determining thru [sic] county planning the possibility of

subdividing said property to [debtor's] satisfaction within 3 working days after final acceptance of this offer.

At the time the debtor's offer was presented to Mr. Holm, the Schreiders were visiting the east cost and accordingly, Mr. Holm called the Schreiders to relay the offer to them. On July 8, 1979, a counter offer was delivered to the debtor, which had been prepared by Mr. Holm and contained his signature. The counter offer agreed to the terms of the original offer generally, but also included certain other terms. Among the new terms, the counter offer stated that it agreed to the filing of a "minor subdivision map" if the debtor would agree to pay $30,000 for the release of any parcel created by such subdivision. The debtor counter offered, agreeing to the terms, but changing the release payment to $30,000 for "the front proposed parcel" and $20,000 for the "rear proposed parcel." Although the debtor had counter offered on July 13, 1979, with a proposal to remove the contingency clause (supra), the counter offer was apparently rejected by the Schreiders.

Exactly what date the Schreiders accepted the proposed offer is unclear. The Schreiders' signatures on the acceptance are not dated and the appellee argues that the Schreiders did not accept the contract until August 1979, "when they returned from the east coast." The debtor, on the other hand, argues that Mr. Holm accepted the proposed offer on July 13, 1979. This fact is also unclear from the record since Mr. Holm's signature is also undated and because only certain portions of the transcripts were included in the record.

On July 16, 1979 the debtor retained a registered engineer (Mr. Schell), to prepare an application for a "three lot subdivision." The record also indicates that prior to August 1, 1979, Mr. Schell pointed out to Mr. Chung that a three lot subdivision might require a variance from the zoning requirement of 20,000 square feet per lot because certain footage would have to be deducted

---

1. The M.L.S. listing is not identified in the record, but apparently set forth the same information as contained in the property prospectus.

for a "driveway easement" and for the widening of Crest Avenue. Taking these two deductions into consideration, the "proposed front parcel" contained only 18,500 square feet.

On August 27, 1979, Mr. Schell filed the application for the subdivision with a Contra Costa County Zoning Administrator. On September 7, 1979, escrow closed on the property and on October 29, 1979, the Zoning Administrator denied the debtor's application for the three lot subdivision and approved only a two lot subdivision. Although it was possible to appeal the Zoning Administrator's decision to the County Planning Commission, the debtor chose not to do so.

Over the next six (6) years, the debtor did not confront the Schreiders with any allegations of misrepresentation, even though both parties had numerous subsequent contacts with each other. (i.e. debtor made the full installment payments from 1979 to 1984; debtor was given several extensions at the debtor's request and eventually signed an Extension and Modification of the note secured by a deed of trust in August 1984 when the original term of the note (5 years) was about to expire).

## BANKRUPTCY COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

After the debtor filed an objection to the appellee's proof of claim, the appellee filed an answer denying all allegations of misrepresentation and asserted affirmative defenses of waiver and laches. A trial on the debtor's objection was held on October 14, 1986, and after the debtor completed its presentation of evidence, the court granted a motion to dismiss brought by the appellee on the basis that the debtor had not shown a right to relief.

The bankruptcy court determined that Mr. Holm's representation *that the property could be subdivided into three lots* (the representation), was "made as a statement of opinion and not as statement of fact." Additionally, the bankruptcy court held that "[t]here was no misrepresentation of

fact or reasonable reliance upon a misrepresentation," because Mr. Chung was an engineer and experienced home builder who knew that the Zoning Administrator's decision could not be predicated with certainty.

The bankruptcy court also determined that Mr. Holm and the Schreiders had reasonable grounds for believing the truth of the representation. The bankruptcy court further determined that the debtor had not entered into the contract in reliance on the representation. Finally, the court determined that any grounds for the complaint had been *waived* by the debtor.

Based on the above determinations, the bankruptcy court concluded that the debtor had failed to establish that any fraud or negligent misrepresentation had occurred. Accordingly, the bankruptcy court dismissed the debtor's objection to the appellee's proof of claim.

## DISCUSSION

This Panel reviews findings of fact under the clearly erroneous standard "and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013. Conclusions of law are reviewed *de novo. Anderson v. City Of Bessemer,* 470 U.S. 564, 105 S.Ct. 1504, 16 L.Ed.2d 518 (1985).

■ Initially, the debtor argues that under California law, the Schreiders are liable for the representations made by the "cooperating broker" Ms. Williams. However, the debtor admits that Ms. Williams was the debtor's own real estate agent retained by the debtor to negotiate the terms of the purchase contract. Even assuming that the debtor's characterization of California law is correct with regard to a "cooperating broker," nothing in the record indicates that this issue was ever raised before the bankruptcy court. Indeed the debtor's objection to the appellee's claim does not allege that Ms. Williams made any representations and essentially asserts that John Holm is the only agent that made any representations. It is well recognized that

in most circumstances an appellate court will not consider an issue not raised before the trial court. *In re Howell*, 731 F.2d 624, 627 (9th Cir.1984). Further, none of the narrow exceptions to this general rule are applicable in this case because the record is too incomplete to adequately address the issue. *See In re Burkhart*, 84 B.R. 658 (9th Cir. BAP 1988).

## I. *Reliance on a Misrepresentation of Fact.*

The debtor argues that the bankruptcy court erred in finding that there had been no representation of fact and that reliance on any such representation was not reasonable.

■ Initially, it is recognized that whether a particular statement is an expression of opinion or a statement of fact, depends upon all the circumstances of the case and is a question of fact for the trial court to determine. *E.g. Bank of America National Trust v. Hutchinson*, 212 Cal.App.2d 142, 27 Cal.Rptr. 787, 790 (Dist.Ct.App. 1963). Although there is no clear line between what constitutes a statement of fact or statement of opinion, there is sufficient evidence on the record before this Panel to support the bankruptcy court's determination.

Mr. Chung was well aware of the fact that the property had not yet been formally approved for subdivision into three lots. He also knew that obtaining such approval required application to the county where specific requirements had to be met. Accordingly, Mr. Chung inserted the "contingency clause" into the offer which provided that the offer was "subject to Buyer determining thru County Planning the possibility of subdividing said property to Buyer's satisfaction...." This clause would indicate that based on Mr. Chung's own extensive experience, he considered the representation of subdivisibility to be one of opinion in which he sought to investigate himself. The court's finding is also supported by Mr. Chung's own testimony in which he stated that he had contacted Mr. Schell to

find out for sure whether the subdivision could be obtained. Given these circumstances, the trial court was not clearly erroneous in finding that the representation at issue was an expression of opinion.

It is well recognized that under California law, a representation of an opinion is generally not actionable, unless the defendant holds himself out to be specially qualified or has special knowledge or special information. *E.g. Harizim v. Lynam*, 267 Cal.App.2d 127, 72 Cal.Rptr. 670, 673 (1968); *Borba v. Thomas*, 70 Cal.App.3d 144, 138 Cal.Rptr. 565 (1977). In the instant case, it is essentially undisputed that both the debtor and the Schreiders had equal access to the relevant facts regarding the subdivisibility of the property and there was no evidence that the Schreiders or their agent held themselves out as having any specialized knowledge that was not freely ascertainable by the debtor.

■ Additionally, the court determined that the debtor's reliance on the representation was not reasonable under the circumstances. The issue of the reasonableness of a person's reliance is a question of fact. *E.g. Danzig v. Jack Grynberg & Associates*, 161 Cal.App.3d 1128, 1138, 208 Cal.Rptr. 336, 342 (Cal.App. 1 Dist.1984). In the instant case, the record indicates that Mr. Chung made his own independent investigation and inspection of the property, and made his own calculations as to the lot sizes. "It is a well settled rule that where a party relies on his own investigation and inspection of property, regardless of the vendor's representations, he cannot claim to have been mislead by such statements." *Heifetz v. Bell*, 101 Cal.App.2d 275, 225 P.2d 231, 232 (Dist.Ct.App.1950) (citations omitted). Further, the record before this Panel indicates that Mr. Chung was informed by his own engineer that in order to obtain the three lot subdivision a variance would be necessary. The debtor, however, still chose to go ahead with the purchase of the property rather than withdraw its offer.[2] Accordingly, there is suffi-

---

**2.** The record indicates that the debtor was aware of this information prior to the signing of

the purchase contract by the Schreiders in August 1979. The debtor argues that it was, how-

cient evidence to support the trial court's finding that the debtor's reliance was not reasonable under the circumstances.

## II. *Falsehood and Scienter.*

■ In order to establish a claim for fraud or false representation, California law requires that a party establish that the representation was false and was negligently made or made with knowledge of its falsity. *E.g. Edwards v. Lang*, 198 Cal. App.2d 5, 18 Cal.Rptr. 60 (Cal.App.1961); *In re Wallen*, 34 B.R. 785 (9th Cir. BAP 1983) *affirmed* 742 F.2d 1461 and 742 F.2d 1463 (9th Cir.1984).

The alleged misrepresentation in the instant case was that the property could be subdivided into three separate lots. Mr. Chung testified that even in 1984, he still believed that there was a chance to get the variance approved by the county. Additionally, Mr. Schell had indicated that obtaining the variance may have still been possible after the initial rejection of the three lot subdivision. It appears from this evidence that the debtor for some reason decided not to pursue a three lot subdivision and settled for the two lot division instead. The fact that a variance was still possible in order to obtain the three lot subdivision supports the finding that the representation was not false. Given these facts, the trial court's finding that the representation was not false is not clearly erroneous.

■ Additionally, the trial court determined that the representation was not made recklessly and that Mr. Holm and the Schreiders had reasonable grounds for believing the truth of the representation. The record indicates that both the Schreiders' and Mr. Chung's initial calculations were made without the knowledge that the bordering street was to be widened or that a driveway easement for the back lot would be required. Under these circumstances

the court's finding that the representation was "innocent" is not clearly erroneous.

## III. *Waiver.*

The trial court also determined that "any ground for complaint" had been *waived* by the debtor because it had continued to occupy the property, made payments on the note, requested extensions of time for payment, requested the Schreiders to join in the application for final approval of the "two-parcel subdivision," entered into an agreement for extension and modification of the terms of the Note, and failed to make any claim for fraud until the appellee had recorded notice of default more than five years after learning of the subdivision problem.

It is undisputed that *affirmance* of a contract, after acquisition of knowledge of a fraud will result in *waiver* of the cause of action. 54 Cal.Jur.3d 558–60. Although the debtor does not dispute the above rule of law, it argues that it did not have "full knowledge of the facts." As evidence of the above assertion, the debtor cites to the fact that "Mr. Chung continued to hope that the county would grant a variance and that he would obtain approval of the third lot at a later date." Although this fact may support the debtor's argument against waiver, it supports the trial court's previously discussed finding that no misrepresentation occurred. The debtor's own admission that a variance was still a possibility, defeats the allegations of misrepresentation when no subsequent attempt to obtain the variance was ever made.

## CONCLUSION

Based on the foregoing, there is sufficient evidence to support the bankruptcy court's dismissal of the debtor's objection.

ever, contractually bound by the contract as of July 13, 1979, because Mr. Holm had signed the contract on behalf of the Schreiders. This argument is not supported by the record. The signature of Mr. Holm is undated and it is unclear when he did sign the purchase contract. Further, even if Mr. Holm did sign the purchase

contract on July 13, 1979, there is insufficient evidence in the record to establish that Mr. Holm had the authority to bind the Schreiders. From the record before this Panel, it appears that the debtor could have withdrawn its offer to purchase the property up until the Schreiders had accepted.

Accordingly, the order of the bankruptcy court is AFFIRMED.