In re BLACK & WHITE CATTLE CO., a California limited partnership, Debtor.

BLACK & WHITE CATTLE CO., a California limited partnership, Debtor and Debtor in Possession, Plaintiff/Appellee,

v.

SHAMROCK FARMS COMPANY, an Arizona corporation, Modesto Production Credit Association, and McLod Farms Company, an Arizona corporation, Defendants/Appellants.

No. CV 83–1491–CHH.
Bankruptcy No. LA–82–6631–CA.

United States District Court,
C.D. California.

April 18, 1983.

See also, 30 B.R. 508.

Richard Levin, a Member of Stutman, Treister & Glatt, Los Angeles, Cal., for plaintiff/appellee.

John P. Frank, Gerald K. Smith, Susan M. Freeman, Randolph J. Haines, Lewis & Roca, Phoenix, Ariz., Sally S. Neely, Sidley & Austin, Los Angeles, Cal., for defendants/appellants Shamrock & McLod.

Walter J. Schmidt, Martin, Crabtree, Schmidt & Zeff, Modesto, Cal., for defendant/appellant Modesto PCA.

ORDER GRANTING PLAINTIFF/APPELLEE'S MOTION TO DISMISS

CYNTHIA HOLCOMB HALL, District Judge.

This matter is before the Court on plaintiff/appellee's motion to dismiss for lack of subject matter jurisdiction. The Court has considered the points and authorities submitted by the parties and the oral argument of counsel.

IT IS HEREBY ORDERED that plaintiff/appellee's motion to dismiss is granted. This Order is based upon the considerations stated below.

This case is an appeal from an order granting Second Partial Summary Judgment to plaintiff, entered on December 14, 1982, by Judge Ashland of the United States Bankruptcy Court for the Central District of California. Defendants filed a Notice of Appeal on December 22, 1982 with the Bankruptcy Appellate Panels for the Ninth Circuit, which were established by the Judicial Council of the Ninth Circuit pursuant to 28 U.S.C. § 160. On December 24, 1982, the stay of the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("*Marathon*") expired. *Marathon* declared that the delegation of original jurisdiction to the Bankruptcy Court, 28 U.S.C. § 1471, violated article III of the Constitution. Nonetheless, in a one-page Order issued December 28, 1982, the Judicial Council ordered that all appeals from an order or judgment of a Bankruptcy Judge entered *prior* to December 24, 1982 were to be appealed to the Bankruptcy Appellate Panels. All appeals from an order or judgment *on or after* December 24, 1982, must be to the United

States District Court. Although the Judicial Council did not set forth its reasons, it appears to have assumed that Bankruptcy Judges could continue to exercise their appellate powers pursuant to 28 U.S.C. § *1482* notwithstanding the invalidation of the grant of jurisdiction under section 1471.

In addition to filing an appeal with the Bankruptcy Appellate Panels on December 22, 1982, defendants also filed a Notice of Appeal with this Court on December 27, 1982, in order to protect its right of appeal in the event that section 1482 is constitutionally defective. An appeal must be taken to the district courts if no Bankruptcy Appellate Panel has been designated. 28 U.S.C. § 1334. On this motion to dismiss, it is necessary to first consider whether the Bankruptcy Appellate Panels may constitutionally exercise jurisdiction under 28 U.S.C. § 1482 before deciding whether this Court has subject matter jurisdiction to hear this appeal.

In *Marathon,* the Supreme Court considered the question of whether the grant of original jurisdiction in section 1471 could properly be exercised by a non-Article III court. Although the Court acknowledged the "special procedure for appeals from orders of bankruptcy courts," established by section 1482, 102 S.Ct. at 2863, nowhere did it contemplate the question of whether Bankruptcy Judges could continue to exercise appellate jurisdiction in the event of congressional inaction following the entry of judgment in *Marathon.* The principal constitutional defect identified in *Marathon* appears to be the vesting of broad jurisdictional powers in a non-Article III court, including authority over a broad range of non-bankruptcy matters. Though the Court approved the long-standing practice of creating non-Article III courts to adjudicate specialized matters in certain circumstances, it concluded that the Bankruptcy Court could not exercise such broad powers under any of these established principles. In particular, the Court considered whether the Bankruptcy Court could be rationalized as an "adjunct" to the United States District Courts. Although the Supreme Court had relied upon this theory to uphold the validity of the Magistrate's Act in *United States v. Raddatz,* 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980), it reached the opposite conclusion in applying it to the Bankruptcy Court. *Marathon, supra,* 102 S.Ct. at 2874–80.

In contrast to an exercise of jurisdiction at the trial level, the Bankruptcy Appellate Panels play a far more circumscribed role in the adjudicatory process. When sitting in an appellate capacity, a bankruptcy judge does not exercise many of the "essential attributes of the judicial power," *Crowell v. Benson,* 285 U.S. 22, 51, 52 S.Ct. 285, 292, 76 L.Ed. 598 (1932); such as the power to preside over jury trials. Significantly, any decision rendered by a Panel may be reviewed *de novo* on appeal to the Ninth Circuit. Continued operation of the Panels do not, therefore, present the risk that a non-Article III trial judge will shape the record of a case so that appellate review is rendered ineffective. *See Marathon,* 102 S.Ct. at 2879. Instead, the Court of Appeals may conduct a full review of the same record presented to a Bankruptcy Appellate Panel. 28 U.S.C. § 1293(b). In this capacity, the Panels can be considered as adjuncts to the Court of Appeals. In approving the analogous role played by Magistrates in relation to the district courts, Justice Blackmun observed in *Raddatz, supra* 447 U.S. at 686, 100 S.Ct. at 2417, that there is no constitutional flaw with "a procedure under which Congress has vested in Art. III judges the discretionary power to delegate certain functions to competent and impartial assistants while ensuring that the judges retain complete supervisory control over the assistants' activities."

Without doubt, there is some anomaly in creating an appellate process that requires a decision rendered by a judge invested with the full jurisdiction of an Article III court to be appealed to a tribunal of non-Article III judges. In contrast to the many examples of permissible delegation of trial court functions to non-Article III officers, such as magistrates, special masters, and referees, there does not appear to be any precedent for the creation of similar ad-

juncts by an Article III appellate court. On the other hand, there does not appear to be any compelling reason for concluding that such a delegation of judicial power is prohibited by Article III. Any decision reached by a Bankruptcy Appellate Panel may be appealed to the Court of Appeals, assuring review by at least one Article III tribunal.

Because I conclude that the Bankruptcy Appellate Panels may continue to exercise appellate jurisdiction pursuant to 28 U.S.C. § 1482 with respect to an order or judgment of a Bankruptcy Judge entered prior to December 24, 1982, this Court has no jurisdiction over this appeal. Accordingly, the appeal is dismissed.