In re Robert A. WALLEN and Barbara A. Wallen aka Barbara A. Collar, Debtors.

EQUITABLE FACTORS COMPANY, Defendant and Appellant,

v.

Robert A. WALLEN and Barbara A. Wallen, Plaintiffs and Appellees.

Bankruptcy No. LA 81–07569–CA.

Adv. No. LA 81–3127–CA.

BAP No. CC–82–1064 VAbG.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued April 21, 1983.

Decided Nov. 8, 1983.

Samuel Bufford, Gendel, Raskoff, Shapiro & Quittner, Los Angeles, Cal., for defendant and appellant.

Sandra L. Bendon, Sulmeyer, Kupetz, Baumann & Rothman, Los Angeles, Cal., for plaintiffs and appellees.

Before VOLINN, ABRAHAMS and GEORGE, Bankruptcy Judges.

## OPINION

VOLINN, Bankruptcy Judge:

### I. FACTS

Prior to July, 1979, the debtors, Robert and Barbara Wallen, owned the stock in Iberia Jewelry Design, Inc. (Iberia), a business which produced costume jewelry. On January 27, 1978, the debtors entered into an agreement with appellant, Equitable Factors Company (Equitable), to provide accounts receivable financing to Iberia. The debtors personally guaranteed the Iberia indebtedness to Equitable, providing as collateral for the guarantee a deed of trust on their residence in Sherman Oaks, California.

In July, 1979, Iberia was experiencing financial difficulties. On July 20, 1979, John P. Gallo, the general operating mana-

ger of Iberia, Equitable, and the debtors entered into an agreement whereby the Wallens transferred their stock in Iberia to Gallo and his wife, resigned as officers, and surrendered control of Iberia to the Gallos. The Gallos, in turn, gave Equitable a personal guarantee of Iberia's indebtedness to Equitable. The agreement also required the Wallens continue their personal guarantee with a second deed of trust on the Sherman Oaks home as collateral, but limited the guarantee to $70,000. The July agreement further stated:

"If IBERIA is actively engaged in business on December 17, 1979, and/or EQUITABLE has not terminated the Security Agreement dated January 27, 1978, prior to December 17, 1979; EQUITABLE shall upon the payment to it of the sum of $10,000.00 and interest accrued thereon, by IBERIA (or by WALLEN for IBERIA) cancel said Guarantee of WALLEN and execute and deliver to WALLEN a Request for Reconveyance of the Deed of Trust EQUITABLE holds on WALLEN's said real property and a full release of all liability and indebtedness of WALLEN to EQUITABLE. . . ."

The debtors paid the $10,000 called for in the foregoing agreement prior to December 17, 1979.

In October, 1979, the debtors purchased a new home in Tujunga, California, and requested that Equitable transfer its deed of trust from the Sherman Oaks home (which the debtors were selling) to the Tujunga home. Equitable refused unless the debtors agreed to extend their personal guarantee and deed of trust collateral until November 1, 1980. The Gallos, Equitable, and the debtors entered into an addendum to the July 20, 1979 agreement whereby the debtors' guarantee was extended until November 1, 1980 and collateralized by a deed of trust on the debtors' home in Tujunga.

Equitable continued to fund Iberia until February, 1980 when Gallo relinquished possession of the business and its assets to Equitable. The business assets were liquidated and Equitable released the Gallos from their personal guarantee without the consent of the debtors. After the release, Iberia was still indebted to Equitable for approximately $337,900.

Equitable proceeded to foreclose on its deed of trust in the Tujunga property when the debtors failed to make good on their guarantee. The debtors commenced an action against Equitable in California Superior Court for cancellation of the deed of trust, quiet title, and other relief against Equitable with respect to the Tujunga property. The debtors subsequently filed a bankruptcy proceeding pursuant to 11 U.S.C. Chapter 13, and removed the state court action to the bankruptcy court on July 20, 1981.

A trial was held on the debtors' action in the bankruptcy court on November 10, 1981. On February 11, 1982, the bankruptcy court determined that Equitable had procured the October addendum to the July 20, 1979, agreement by fraud and duress, thereby voiding the addendum. With the addendum void, the debtors were bound only by the terms of the July 20, 1979 agreement, which the bankruptcy court found to have been fulfilled. The court also found that any liability of the debtors under the guarantee agreements with Equitable was exonerated when Equitable settled their guarantee claim against the Gallos without the consent of the Wallens. As a result the court concluded that the debtors "were entitled to a judgment cancelling and avoiding all obligations owing to Equitable, and cancelling and avoiding the deed of trust on the Tujunga property." Equitable appealed this decision.

## II. DISCUSSION

Equitable has asserted three general reasons which it contends require reversal of the bankruptcy court decision: (1) The bankruptcy court and this court lack jurisdiction over the subject matter of this litigation; (2) The October addendum was not procured by Equitable from the debtors by fraud or duress; and (3) Equitable's release of the Gallos, even without the debtors' consent, under California law and the language of the guarantee agreements, did not

thereby release the debtors from their guarantee obligations.

A. Jurisdiction

Equitable challenges the jurisdiction of the bankruptcy court and this court based on *Northern Pipeline Construction Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The date that the decision in *Marathon* was to take effect was stayed by the Supreme Court until December 24, 1982, and the majority limited its holding to apply only prospectively. —— U.S. —— at ——, 103 S.Ct. 199 at 200, 74 L.Ed.2d 160, 458 U.S. at 87, 92, 102 S.Ct. at 2880, 2882.

■ The bankruptcy court, having entered its decision in this case on February 11, 1982, clearly retained jurisdiction here based on the prospective application of *Marathon. In re Eastview Estates II,* 713 F.2d 443, (9th Cir.1983). The language of the plurality opinion in *Marathon* would also support the continued jurisdiction of this Panel on this case even though the decision is rendered after the effective date of *Marathon.* The plurality opinion stated as follows on the issue of retroactive application of the decision:

"Our decision in *Chevron Oil Co. v. Huson,* 404 U.S. 97 [92 S.Ct. 349, 30 L.Ed.2d 296] (1971), sets forth the three considerations recognized by our precedents as properly bearing upon the issue of retroactivity. They are, first, whether the holding in question 'decided an issue of first impression whose resolution was not clearly foreshadowed' by earlier cases, *id.,* at 106 [92 S.Ct. at 355]; second, 'whether retrospective operation will further or retard [the] operation' of the holding in question, *id.,* at 107 [92 S.Ct. at 355]; and third, whether retroactive application 'could produce substantial inequitable results' in individual cases, *ibid.* In the present case, all of these considerations militate against the retroactive application of our holding today. It is plain that

Congress' broad grant of judicial power to non-Art. III bankruptcy judges presents an unprecedented question of interpretation of Art. III. *It is equally plain that retroactive application would not further the operation of our holding, and would surely visit substantial injustice and hardship upon those litigants who relied upon the Act's vesting of jurisdiction in the bankruptcy courts.* We hold, therefore, that our decision today shall apply only prospectively." (emphasis supplied) 458 U.S. at 87–88, 102 S.Ct. at 2880.

It appears that the plurality intended that "vesting of jurisdiction" not be retroactively affected by the *Marathon* holding. Notice of appeal in this case was filed by Equitable on February 19, 1982, at which time jurisdiction became vested in this court. *Marathon,* not taking effect until December 24, 1982, was not intended by the majority to retroactively suspend jurisdiction to a case such as this where jurisdiction had already vested.

The recent case of *In re Dartmouth House Nursing Home, Inc., Erlin Manor Nursing Home, Inc., St. John's Nursing Home, Inc.,* 30 B.R. 56, 10 BCD 754 (Bkrtcy. 1st Cir.1983) held that the Bankruptcy Appellate Panel for the First Circuit was without jurisdiction to hear appeals from decisions of bankruptcy courts. The operational authority of that Panel and this Panel are distinguishable, see discussion in concurring opinion, Votolato, J. This Panel is operating under an Order promulgated by the Judicial Council of the Ninth Circuit whereas a similar order was not in effect when *Dartmouth* was decided.[1] The power of the Judicial Council to enact rules or resolutions applicable to judicial bodies within the Circuit has been upheld as long as it does not exercise traditional judicial functions. *In re Imperial "400" National, Inc.,* 481 F.2d 41, 46, rehearing denied, 486 F.2d 297 (3d Cir.1973), cert. denied, 414 U.S. 880, 94 S.Ct. 71, 38 L.Ed.2d 125 (1973). *Cf.*

---

**1.** The Order of the Ninth Circuit Council is attached to this Opinion due to its importance.

(See Appendix)

*In re Charge of Judicial Misconduct,* 613 F.2d 768 (9th Cir.1980).

Recent analogous cases have rejected efforts to divest this Panel of jurisdiction. *Cf., Black & White Cattle Co.,* 36 B.R. 72 (Decided April 14, 1983), where the United States District Court for the Central District of California, apparently in an unpublished Order, recognized and upheld the jurisdiction of this Panel. *See also, Christian Life Center Litigation Defense Committee v. United States Bankruptcy Appellate Panels For The Ninth Circuit,* No. C–83–0318 AJZ, (Decided February 22, 1983) (United States District Court for the Northern District of California denied request for Writs of Prohibition and Mandamus with respect to actions of this Panel based on *Marathon* stating: "This court, however, cannot find that the Ninth Circuit's order giving the appellate panel jurisdiction over this appeal is clearly erroneous in light of the Supreme Court's *Marathon* decision." A similar request for Writ of Prohibition and Mandamus in the same case was made to and denied by the United States Court of Appeals for the Ninth Circuit in No. 83–7230, Decided May 24, 1983.)

Equitable has misconstrued the origin of the rule described above stating that the authority of this Court has been established by a local rule of the Ninth Circuit Court of Appeals. Otherwise, Equitable has failed to convince us that jurisdiction is not properly with this Court.

## B.  Fraud

The findings of the trial court with respect to fraud may not be set aside by this court unless they are clearly erroneous. Bankruptcy Rule 8013.

■  The elements necessary to sustain a cause of action for fraud include: (1) A conscious misrepresentation, or concealment, or non-disclosure of a material fact; (2) Knowledge of the falsity; (3) Intent to defraud, that is, to induce reliance; (4) Justifiable reliance; and (5) Resulting damage.[2]

■  A duly authorized agent of Equitable represented to the debtors that unless the debtors extended the terms of the guaranty, Equitable would terminate their security arrangement with Iberia and put Iberia out of business, thereby triggering the debtors' obligations to Equitable under the existing guaranty. While the existence of the debtors' guaranty had some effect on Equitable's decision to continue financing Iberia, its security in the business and the Gallos' infusion of private funds into the business were the prime factors considered in continuing the financing. The testimony shows, and the court was entitled to find, that Equitable had not made a determination that it would terminate its security prior to December 17, 1979 if the debtors failed to continue their security, as represented by Equitable to them.

Mr. Wallen testified that he would not have extended the guaranty had Equitable not represented that it would foreclose on the business if he did not extend the guaranty.[3] This was certainly the result which Equitable intended from its misrepresentations. The debtors were damaged by the additional liability which they encountered as a result of the failure of Iberia and

**2.** *Watts v. Crocker Citizens National Bank,* 132 Cal.App.3d 516, 522, 183 Cal.Rptr. 304, 307 (1982) (note 2); *Odorizzi v. Bloomfield School District,* 246 Cal.App.2d 123, 54 Cal.Rptr. 533, 538 (1966).

**3.** Equitable places great weight on testimony by Mr. Wallen to the effect that he did not "rely" on statements by a principal of Equitable that it would not let Iberia be in business unless he signed the extension of the guaranty. The existence of potentially conflicting testimony does not defeat the clearly erroneous test

here. The debtor's testimony that he would not have signed the extension had Equitable not made the misrepresentation is more convincing testimony than a statement that the debtor did not "rely" on the misrepresentation which would leave open a potential for misunderstanding by a lay person on the meaning of reliance. The bankruptcy judge accepted the debtor's testimony that he did rely. Under the circumstances the finding is not clearly erroneous.

Equitable's attempt to collect under the terms of the guaranty.

We cannot conclude that the trial court was clearly erroneous in its findings that the October extension was procured by Equitable from the debtors by fraud.

On this basis we need not review the bankruptcy court's findings with regard to duress, nor deal with the issue as to whether the debtors were relieved by virtue of Gallo's release.

## III. CONCLUSION

The decision of the trial court is AFFIRMED.

## APPENDIX

### JUDICIAL COUNCIL OF THE NINTH CIRCUIT

*Order Establishing Appellate Review Procedures in Bankruptcy Cases*

IT IS ORDERED that, at such time that the stay expires and judgment is filed by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858 [73 L.Ed.2d 598] (1982) (*Marathon*), appellate review of bankruptcy cases shall be as follows:

(1) The bankruptcy appellate panels shall consider and resolve all appeals in which the order or judgment to be reviewed has been entered by the bankruptcy judge before the filing of judgment in *Marathon.*

(2) The bankruptcy appellate panels shall not consider or resolve any appeals in which the order or judgment to be reviewed is entered by the bankruptcy judge after the filing of judgment in *Marathon.*

(3) Appeals from orders, judgments, proposed orders, and proposed judgments entered or lodged by the bankruptcy judge after the filing of judgment in *Marathon* shall be before a district judge in the manner provided by the local bankruptcy reference rule of the district.

(4) Appeals from all judgments and orders of district judges in all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11 shall be to the Court of Appeals pursuant to Section 405(c) of the Bankruptcy Act of 1978, P.L. 95–598, 92 Stat. 2549.

FOR THE JUDICIAL COUNCIL:

/s/ James R. Browning
James R. Browning
Chief Judge