[Civ. No. 8440. Second Appellate District, Division Two.—July 6, 1932.]

In the Matter of the Estate of CHARLES W. SPITLY, Deceased. CITIZENS NATIONAL TRUST & SAVINGS BANK OF LOS ANGELES, Appellant, v. RAY L. RILEY, Controller, etc., et al., Respondents.

Todd W. Johnson and Philip D. Johnston for Appellant.

David Tannenbaum, Charles M. Cassin and W. H. H. Gentry for Respondents.

FRICKE, J., *pro tem.*—Appellant as executor of the estate of Charles W. Spitly, deceased, filed objections to the report of the inheritance tax appraiser, directing the objections against the valuation by the appraiser of 2,400 shares of preferred and 22,300 shares of the common stock of the Richfield Oil Company and against the amount of the inheritance tax fixed as the result of such valuations. Respondent interposed a general demurrer to the objections and the demurrer was sustained without leave to amend.

The appraiser valued the preferred stock at $21⅞ per share and the common stock at $25⅝ per share. Basically it was contended by the objections filed by appellant that these figures did not represent the fair market value for the purpose of computing the inheritance tax while respondent contends that these figures, being the prices at which the securities sold on the stock exchange represent their market value and are conclusive. The filed objections recite that the appraised values were the sale prices of such shares on the stock exchange on the date of decedent's death, but allege further that the sales on the stock exchange were made at such prices ''on the basis of erroneous, false and misleading information about the affairs and financial condition'' of the Richfield Oil Company whose published financial statements grossly overstated its assets, net income and profits, and understated its liabilities and that had the true facts been known the stock, both preferred and common, would have sold at a price not in excess of $4 per share. The objections also allege that on the date of decedent's death the price of the shares on the stock exchange was inflated and artificially stimulated as the result of the operations of a pool.

The value of the securities in question is their value at the time of the death of the decedent and any subsequent appreciation or depreciation in their value is immaterial so far as the issues here are concerned. (*Estate of Hite,* 159 Cal. 392, 395 [Ann. Cas. 1912C, 1014, 32 L. R. A. (N. S.) 1167, 113 Pac. 1072]; *Riley* v. *Havard,* 193 Cal. 522, 528

[226 Pac. 393]; *Estate of Miller,* 184 Cal. 674, 686 [16 A. L. R. 694, 195 Pac. 413].) The arguments of counsel based upon the decline in the stock market prices of the stock after decedent's death are, therefore, inapplicable.

The California Inheritance Tax Act provides that the tax shall be "upon the market value" of the property upon which the tax is imposed (sec. 2) and that the appraiser shall report to the court the "clear market value". (Sec. 16.) The term "clear market price" is synonymous with the term "fair market price" (*In re Dupignac's Estate,* 123 Misc. Rep. 21 [204 N. Y. Supp. 273]), and "fair market price" means not only that the price be ascertained by sales, but that the sales so made and the subject matter of the sales are to be considered. (*Walter* v. *Duffy,* 287 Fed. 41.)

■ Appellant does not contend, nor do we hold, that the value of corporate shares may not be proved by evidence of the prices current upon the stock exchange. Such evidence is admissible to prove the value of stock shares (*People* v. *Schwarz,* 78 Cal. App. 561, 578 [248 Pac. 990]), but we are aware of no authority which holds that stock exchange prices are conclusive evidence of value. Appellant does contend, however, that where, as here, the value is based solely upon stock exchange prices, such valuation may be objected to and successfully attacked by proof that such stock exchange prices are the result of misinformation disseminated by the corporation whose shares are under consideration, the result of pool selling or buying, intended to cause and causing sales at purely speculative prices, or a combination of both factors. It may be conceded that there is no universal touchstone for determining the value of shares of stock applicable to all cases. If information, believed by those who receive it to be true, but which is in fact substantially false and misleading, caused prospective buyers and sellers of a corporate security to form similar erroneous conclusions as to the value of the stock and, relying thereon, a substantial number of sales were made on that basis, the selling price on the stock exchange would not be a proper index of the true value of the security, and the same might be said if the selling price was the result of deliberate juggling, wash sales or other device intended to fix the buying and selling prices at a figure other than the true value of the security. ■ The standard of market

value as a true criterion of value rests on the premise that voluntary buyers and sellers, familiar with the factors of value, have formed opinions as to the value of the property sold which they themselves consider of a reliability sufficient to induce their parting with their money and property. Where, however, it appears that buyers and sellers in their market dealings have formed their opinions as a result of their reliance upon information as to the factors of value, which information is in fact false and untrue, then such opinions are false opinions and the sales made pursuant to such opinions cannot be considered as correctly indicating the value of the property and any value based upon such sales would be a false value.

In *Phillips* v. *United States,* 12 Fed. (2d) 598, the court defines fair market value "to be the value of the property in money as between one who wishes to purchase and one who wishes to sell, the price at which the seller is willing to sell at a fair price and a buyer willing to buy at a fair price, *both having reasonable knowledge of the facts".* (Italics ours.) In *Heiner* v. *Crosby,* 24 Fed. (2d) 191, the court says: "Sales made at a particular time and place may be significant but the price paid is not necessarily decisive of fair market price or value. The fact of sales, in itself and without regard to the circumstances under which the sales were made, does not conclusively establish either statutory fair market price or value. Sales made under peculiar and unusual circumstances, such as sales of small lots, forced sales, and sales in a restricted market may neither signify a fair market price or value, nor serve as a basis on which to determine the amount of gain derived from the sale." (See, also, *Ray Consol. Copper Co.* v. *United States,* 268 U. S. 373 [69 L. Ed. 1003, 45 Sup. Ct. Rep. 526]; *Walter* v. *Duffy,* 287 Fed. 41, and cases there cited.)

The effect of the ruling of the trial court, sustaining, without leave to amend, the objections to the report of the inheritance tax appraiser, is tantamount to a ruling that proof of the value of shares of stock in a corporation by evidence of the prices of that security upon the stock exchange is so conclusive that it cannot be attacked by proof that such prices were not based upon the true factors of value, but rested upon the slimy foundation of false statements and

a manipulation of the stock market. With this we cannot agree.

The judgment is reversed, with directions to the trial court to overrule the demurrer.

Work, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 5, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 1, 1932.