Brewer, J.
Carrie Baldwin died testate on the 12th day of September 1930. Her will was duly admitted to probate and thereafter, to-wit; on the 18th day of April, 1933, the application for determination of inheritance tax was filed, and on the 7th day of October, 1933, the inheritance taxes were determined; and to this determination exceptions were filed by Charles A. Niman and Central United National Bank *250 of Cleveland, as administrators d. b. n., c. t. a. of the estate of Carrie Baldwin, deceased; and exceptions were also filed by John J. Tetlow as trustee under the will of said decedent.
The exceptions of the administrators are directed to the appraisement of certain real estate belonging to said estate for the purpose of the inheritance tax; and also the disallowance of their claim of $225,545.87 as the estimated amount of the loss incurred on account of money belonging to the estate, being on deposit with The Union Trust Company on February 27, 1933, when said trust company was taken over by the Superintendent of Banks for the purpose of liquidation.
The exceptions of John J. Tetlow, trustee under the will of Carrie Baldwin, deceased, are directed to valuation of a parcel of land belonging to said decedent’s estate situated at No. 10321 Lake avenue, Cleveland, Ohio, and also the valuation of the E. Ninth street parcel, a parcel located at 101 St. Clair avenue, Cleveland, Ohio, and to the valuation of a parcel of land at the corner of East 6th and Hamilton avenue.
Said trustee’s exceptions are also directed to the valuation of certain land trust certificates representing fractional interests in the equities of certain parcels of land situated in Cleveland and Columbus, Ohio.
The exceptors have conceded that the appraisement of all parcels of land belonging to said estate other than the E. 9th street property is correct; and the exceptions in so far as they relate to these parcels will be overruled.
The E. 9th street property consists of a lot 50 x 115 feet, which is occupied by a six story building about 30 years old. On the ground floor, there are three storerooms, and the upper stories contain 75 rooms and 20 baths.
This property was leased in 1901 for a period of 50 years, at á rental of $3600 per annum, and the lease requires the lessee to pay the taxes and insurance.
The county auditor in the capacity of inheritance tax appraiser, appraised this property at $179,170.00. The exceptors claim that the value of this property does not exceed the sum of $60,000. This value was arrived at by capitalizing the rental at 6%.
*251 On the other hand, the county auditor’s appraisal was based on a study of all the factors that might have an influence in determining the value of the land — the first or original lease, the sublease, the lease and subleases of the adjacent hotel property, the leases and subleases of surrounding property, the location, the use to which the property was put, etc.
The testimony of the expert witnesses called by the ex-ceptors, clearly indicates that they based their opinion of the value of said property on the rental value only, nothing else.
The attorney for the tax commission cites the case of The State of Ohio v. The Union Trust Company, Executor et al, 27 O. App. 156, as similar in all respects to the case at bar. The Union Trust Company was the executor of the will of Levi Johnson, who died seized of an undivided % interest in a parcel of land subject to a lease that would have expired 5 days after his death, but 8 days before his death, said lease was extended for a period of 45 years, provisions being made for páyment of the rent on a graduated basis.
The county auditor in making his appraisal of this land for the purposes of the inheritance tax applied the rule laid down in Section 5342, General Code, capitalizing the income from said estate at 5%. This method gave the succession a value of $271,858.00.
In assessing the tax, this court adopted this valuation. Whereupon, the executor (which was represented by Mr, Thompson) took an appeal from the order of this court determining the tax to the Common Pleas Court, which fixed the value of this property for purposes of the tax at $222,620. To this judgment the tax commission filed a petition in error to the Court of Appeals.
It was held by the Court of Appeals that Section 5342, General Code, applies only to incorporeal property, such as incomes, annuities, etc., but that there was nothing of this kind in the Johnson case. It consisted simply of an undivided one-half interest in real estate, the whole of said real estate being encumbered by, a long term lease, and that Section 5342 did not apply to the Johnson estate; and that the reversion as well as the fee belonged to the lessor; and *252 that the fixing of the value of the land by the method set forth in that statute was under the circumstances, improper.
The syllabus of this case reads as follows:
“1. Section 5342, General Code, providing that value of future or limited estate, income, interest or annuity for life or lives in being or of any dower interest or other estate or interest, for inheritance tax purposes, shall be determined by specified method, held, applicable to incorporeal property, such as incomes, interests, and annuities, and not applicable to undivided one-half interest in real estate the whole of which is encumbered by a long term lease.
“2. Section 5341, General Code, providing that county auditor shall be inheritance tax appraiser, and that Probate Court may direct him to fix actual market value of property for inheritance tax purposes, requires county auditor, on having his attention called to property, to appraise it at its true market value in money at time of devolution of assessment of tax and to report finding to Probate Court.
“3. Method by which county auditor should determine valuation of property for inheritance tax purposes, under Section 5341, General Code, is left to his discretion, and he can capitalize income from property on basis of 6 per" cent, and consider all things influencing value of estate, if he arrives at true value thereby.
“4. Undivided half interest in realty, the whole of which is encumbered by leases for 80 years, should be valued for inheritance tax purposes as real and corporeal property, under Section 5341, General Code, and not as an annuity and incorporeal property, under Section 5342.”
There is no material difference between the Johnson case and that of Carrie Baldwin. In the Johnson case, there was a lease, first for 5, and then one for 75 years, with nothing in the lease which provided for its renewal; and as stated by the court, both the reversion and the fee belonged to the lessor. In the Baldwin case, there is a lease which will run for 21 years after her death. There are no provisions for renewal, and both the fee and the reversion belonged to the lessor.
The conclusion must be .that the method of determining the value of the land urged by the exceptors, does not give the true value. It treats the property in question as in *253 corporeal propery whereas it constitutes a fee, and does not take into consideration any of the many other things which affect the value of real estate. In contrast to this method of valuation, the county auditor arrived at his value by taking into consideration all the elements which might have an influence in giving value to the real estate. His appraisal should therefore be the most reliable.
The auditor however, in making his appraisal, may not have given a sufficient weight to the conditions of business prevailing in these times and their consequent effect on the real estate market. While his method of appraisal is sound and should be approved, his valuation in view of the circumstances, must be considered too high. The lease expires in 1950 and a more advantageous one providing for higher rental may be obtained. I think his valuation should to a considerable extent be reduced. I therefore fix the value of the East 9th street parcel at $90,000.00.
Exceptions To Disallowance of Bank Deposit As A Deductible Item and To Appraisal of Land Certificates.
Carrie Baldwin, at the time of her death, had a deposit with The Union Trust Company amounting to $391,510.53.
The executor of said decedent’s will in preparing the application for determination of the inheritance tax inserted in the schedule of debts and expenses, an item of $225,548.87, which they contend should be deducted in the computation of the inheritance tax from the gross value of the estate, for the reason that the esate has suffered a loss in this amount on account of the closing of the bank. The filing of his exception raises the issue. What is the proper date as of which the valuation should be made for the purposes of the inheritance tax?
The specific source of the authority under which the court levies this tax is found in Section 5332, General Code and for the purpose of laying a foundation on which the legality of the court’s action in rejecting said claim may be demonstrated, I will quote a portion of this statute, sufficient for a discussion of the principles involved in the question at issue.
*254 “Section 5332, General Code. A tax is hereby levied upon the succession to any property passing, in trust or otherwise, to or for the use of a person, institution, or corporation, in the following cases:
“1. When the successor is by will or by the intestate laws of this state, from a person who was a resident of this state at the time of his death * * * * *”
Section 5331, General Code, defines the words, “estate” and “property,” as used in the inheritance tax law, as including everything capable of ownership, or any interest therein or income therefrom, whether tangible or intangible, and; except as to real estate, whether within or without this state, which passes to any one person, institution or corporation, from any one person whether by a single succession or not; and defines “succession” as the passing of property in possession or enjoyment, present or future.
Paragraphs 1 and 2, of Section 5332 deal only with the ordinary successions by will or intestacy, and for the purposes of this case, no other need be considered.
One of the cardinal doctrines of the inheritance tax law is, that the tax accrues because of and at the death of the owner, that the rights and liabilities of the state and the beneficiaries date from that event; and that the value of the property transmitted or received, which measures the value of the inheritance is taken as of that date.
The succession to real estate necessarily takes place at the instant of death, because the will on the one hand and the intestate laws on the other, speak and operate from that date. (Miller v. Douglas, 11 C. C. (N. S.) 205; Carr v. Hull, 65 O. S. 394; Douglass v. Massie, 16 O. 271; Faran, Adm. v. Robinson, et al, 17 O. S. 242; 9 R. C. L. 72; Heth v. Commonwealth, 126 Va. 493, 102 S. E. 66; Matter of Abraham, 151 N. Y. App. Div. 441; 135 N. Y. Supp. 891).
The statutory power of the administrator or executor to sell real estate to pay debts of a decedent does not change the nature, nor the time of the succession, further than to make the titles thus devolved upon the successors contingently defeasible. R. C. L. 74.
The succession to personal property differs in an important respect from the succession to real property in that *255 under the established general law, the immediate successor to the personal property of a decedent, whether he be testate or intestate, is his executor or administrator.
A consideration of the definition of the term, “succession” in connection' with the definitions of the words “estate” and “property,” as defined in Section 5331, General Code, makes it clear that the meaning of the word, “succession” is broad enough to include its being applicable not only to a specific property or thing, but also to a mere interest in property, or a thing less: than a specific title either legal, equitable, in or to any property.
This principle is supported by the rule laid down in Armstrong v. Grandin, 39 O. S. 368, which is, that:
“Subject to administration on the personal estate of an intestate, the right of a distributee vests at the death of the intestate.” “To similar effect are Banning v. Gottschall, 62 O. S. 210 and Conger v. Barker, 11 O. S. 1.”
The cases cited above are sufficient to show that in Ohio, the law, that the rights and liabilities of the beneficiaries become effective at death, is well established; but I wish to quote two more cases in support of this principle.
In an opinion delivered by Judge Ranney, in the. case of Lewis v. Eutsler, 40 E. 355, he said:
“When P died, the legal title to all his personal property vested in his personal representative. He alone, could sue for and recover it, and convert it into money. It vested in him, it is true, as a mere trust estate, for the benefit of creditors and distributees. The right to distribution was a vested right, and if it had belonged to a private person, could not have been impaired by subsequent legislation. In such case, the distribution must have been made according to the law in force when the -right accrued, but it belonged to the state, and she had unlimited control over her own interests.”
In the case of In re Bushnell, 2 N. R. (N. S.) 673 the court said:
“When is the right of succession complete? * * * * The interest of a legatee or distributee vests at the time of the death of the testator, so that he has a claim against the executor, which does not depend upon any contingency, the only uncertainty being as to the amount. ***** *256 I think that there can be no doubt that in the case at bar the interests of the various legatees were vested absolutely upon the death of the testator, and that the duty of the executors was merely to administer the estate in compliance with the will of the testator, and to pay legacies as provided in the will. The right to succeed to or inherit the property * * * * was absolutely, and unalterably fixed at the instant of his death, and there was nothing that could then be done to change or alter or delay the vesting of the various interests. The control of the executors was merely fiduciary and their actions or lack of action could in no way alter, enlarge or diminish the vested right of those entitled to the property under the will, be the same real or personal.
“It is true that the right of enjoyment in possession of personalty was to be postponed 'until the executors had performedysuch duties as are imposed upon them by law.”
Thus, it appears that, while succession on the part of the distributees or legatees to all that they may ultimately succeed to does not take place immediately at death, they nevertheless are vested at death with the right to receive property, and this right is taxed.
It is generally agreed that the proper date for the -valuation of property for the purposes of the inheritance tax is the date of the death.
In re Merrill’s Will (Wis. 1933) 248 N. W. 909; In re McCaddin’s Est. 265 N. Y. S. 666; Davis v. Commissioner (Mass. 1932) 181 N. E. 831; In re Clabbey’s Estate (Pa. 1932) 308 Pa. 287; Blodgett v. Guaranty Trust Co., 114 Conn. 207.
Since the valuation is made as of the date of the death, losses occurring after death are of no effect.
In re Spitly’s Estate, Cal. 1932, 13 P. (2d) 385; In re McCaddin’s Estate, 256 N. Y. S. 666; Insel v. Wright County, 225 N. W. 378; In re Pennfold’s Estate, 140 N. Y. Supp. 920, — It is the opinion of the court that the bank deposit and the land trust certificates, the appraisal of which was also excepted to, were properly valued as of the date of the decedent’s death and that the values placed thereon were the actual market values on the day of the death. The exceptions to the bank deposit and the land trust certificates must therefore be overruled.