Filed 11/29/23 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

<table>
<tr><td>

In re Marriage of DALE MOTISKA and CAROLINE FORD.

DALE MOTISKA,

    Appellant,

        v.

CAROLINE FORD,

    Respondent.

</td><td>

A166543

(Solano County Super. Ct. No. FFL122184)

ORDER MODIFYING OPINION AND DENYING REHEARING; NO CHANGE IN JUDGMENT

</td></tr>
</table>

BY THE COURT:

It is ordered that the opinion filed herein on November 8, 2023, be modified as follows:

1. On page 2, in the first full paragraph, in the first sentence, replace "contribution" with "reimbursement" so the sentence reads:

> We publish our opinion resolving this appeal because the principal question raised here—whether a spouse's sale of property to the marital community for the nominal amount of $1 constitutes a de facto gift, triggering a right to reimbursement under section 2640—is a matter of first impression.

2. On page 10, in the last paragraph, in the first sentence, replace "Buxup Corp" with "Buxup" so the sentence reads:

> Ford argues that substantial evidence supports the trial court's implied finding that the sale of Neon Palm to Buxup fairly reflected its value to Motiska at the time of the sale.

1

There is no change in the judgment.

The petition for rehearing is denied.


Dated:  November 29, 2023                                    BROWN, P. J.

Trial Court:       Superior Court of California, County of Solano

Trial Judge:       Hon. Dora M. Rios

Counsel:           C. Athena Roussos; Law Offices of Michael L. Gums
                   and Michael L. Gums, for Appellant.

                   Montagna Family Law and Stephen A. Montagna, for
                   Respondent.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re Marriage of DALE MOTISKA and CAROLINE FORD. | A166543 |
| DALE MOTISKA, Appellant, v. CAROLINE FORD, Respondent. | (Solano County Super. Ct. No. FFL122184) |

This interlocutory appeal arises from a marital dissolution proceeding involving appellant Dale Motiska and respondent Caroline Ford, who married in January 2001 and separated in 2011. Motiska challenges a trial court order determining he did not have a reimbursement claim under Family Code[1] section 2640 based on an asserted contribution of separate property to a corporation that the court found was a community asset.[2]

---

[1] Undesignated statutory references are to the Family Code.

[2] Section 2640, subdivision (b) states in part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source."

1

Motiska argues the court erred by declining to allow him to present evidence of his separate property contributions and by concluding he had no claim under the statute.

We publish our opinion resolving this appeal because the principal question raised here—whether a spouse's sale of property to the marital community for the nominal amount of $1 constitutes a de facto gift, triggering a right to contribution under section 2640—is a matter of first impression. We answer that question no. Finding no error, we affirm the challenged order.

## I. BACKGROUND[3]

### A. *Neon Palm Nursery and Buxup Corporation*

In 1983, Motiska began operating a nursery business called Neon Palm Nursery (Neon Palm) as a sole proprietorship. Prior to his January 2001 marriage to Ford, Motiska was married to Cynthia Motiska (Cynthia).[4] Motiska and Cynthia divorced pursuant to a status-only judgment in 1999, but litigation pertaining to Neon Palm continued and was ongoing when Motiska and Ford married. As part of a mediated agreement in that litigation, Motiska was awarded Neon Palm as his sole property. This award was confirmed in an interspousal deed filed on April 3, 2002.

In early 2001, shortly after his marriage to Ford, Motiska formed a corporation called Buxup Corporation (Buxup) and began using the business

---

[3] As we discuss further below, prior to issuing the order that Motiska challenges in this appeal, the trial court held two trials on related issues and issued statements of decision. We derive our summary of the underlying facts in part from the court's findings in those statements of decision.

[4] Because Cynthia Motiska shares a surname with appellant Dale Motiska, we refer to her by her first name for clarity. We intend no disrespect.

name Palm Island Nursery (or Palm Island Nursery Outlet); we will sometimes refer to the latter as Palm Island. Specifically, the court found that, in March 2001, Motiska filed a fictitious business name statement registering the name Palm Island Nursery, and that articles of incorporation for Buxup were filed by the Secretary of State on May 15, 2001. The court found that Palm Island began doing business on February 26, 2001, and that both Palm Island and Buxup "were created early in 2001 and began fully operating by August 2001," i.e., "within the first year of [Motiska's] marriage to [Ford]."[5]

The court found that Neon Palm, the preexisting sole proprietorship, ceased doing business in December 2003 and was sold to Buxup for $1. Based on conflicting evidence as to whether the sale occurred in 2001 or 2003 (including discrepancies within Motiska's own testimony, as well as inconsistent corporate minutes), the court found the sale was in 2003, after Motiska's ownership of Neon Palm had been confirmed in the litigation with his previous wife.[6]

---

[5] Motiska states in his appellate brief that Palm Island was "merely a dba of Buxup," while Ford states Palm Island was formed as a business and "later incorporated into" Buxup. In its statements of decision, the trial court referred to the corporation at one point as "Buxup Corporation DBA Palm Island Nursery," while at times discussing Palm Island and Buxup separately. For purposes of this appeal, these varying descriptions of the relationship between *Palm Island* and *Buxup* are not material. As we shall discuss, the important question resolved by the trial court was the relationship between *Neon Palm* (Motiska's preexisting sole proprietorship) and *Buxup* (the later-formed corporation).

[6] In his appellate briefing, Motiska states he does not dispute that Neon Palm was sold to Buxup for $1. He asserts in a one-sentence footnote, however, that there is no evidence he "was actually paid the dollar for the sale." We decline to address this undeveloped point or to question the trial court findings and underlying evidence that the sale occurred.

In the present dissolution matter, Motiska initially took the position that Neon Palm and Buxup were the same nursery business, and that Buxup resulted from the incorporation of that business. In briefing in the trial court, Motiska stated both the Neon Palm and Palm Island names were used for a period of time, with different types of purchases invoiced using the different names. But after conducting a trial on the question, the court rejected Motiska's contention Buxup was a continuation of Neon Palm resulting from incorporation.

The court stated Motiska's formation of Buxup and Palm Island in 2001 was part of an "attempt to 'incorporate' " Neon Palm, but the court found that an incorporation of Neon Palm did not in fact occur and that Buxup was instead "a new and distinct business acquired during the marriage of" Motiska and Ford, thus giving rise to a presumption that it was a community property asset. In summarizing these events, the court stated that, "[j]ust prior to and early in the marriage to Ms. Ford, Mr. Motiska began the process of 'incorporating' " Neon Palm, after "a crane accident that revealed to Mr. Motiska the liability risks involved as an owner of a sole proprietorship." The court also noted that, at that time, the business "was subject to litigation between Mr. Motiska and his previous wife."

After considering the evidence presented at trial, the court rejected the argument that Neon Palm was incorporated, finding instead that Neon Palm was purchased by Buxup in 2003. The court concluded in part: "Neon Palm Nursery was an asset that was subject of continued litigation during the time that Buxup Corporation and Palm Island Nursery were created. Neon Palm Nursery did not go through the process of incorporation, and it was only after the nursery was confirmed to Mr. Motiska as his separate property that Buxup Corporation was able to purchase it. Thus, rather than having been

4

incorporated, Neon Palm Nursery was acquired by Buxup Corporation, a separate business established during the marriage."

## B. *Trial Court Proceedings*

In the present dissolution matter involving Motiska and Ford, the court conducted extensive proceedings pertaining to the characterization of Buxup as community property or separate property and related claims pertaining to the business.

### 1. The 2018 Stipulation

In April 2018, the parties entered a stipulation (which the trial court approved as an order) about how these and other matters would be tried, entitled "stipulation regarding trial issues and reserved issues." The stipulation states there first will be a trial on "[c]haracterization (only)"; although the language as to what property would be characterized is crossed out, the parties' trial court briefing reflects they understood the property at issue was Buxup.

The stipulation then states: "The Court specifically reserves jurisdiction over the following issues, *inter alia*, which will be reserved to a trial on reserved issues." On the list of reserved issues are several relating to "the business," including (1) "In the event that the Court finds that the business is presumptively community property, any rebuttal of the community property presumption via tracing of the acquisition of the business to [Motiska's] separate property," and (2) "Any Family Code section 2640 claims related to the business."

### 2. The 2019 Trial and the January 2020 Statement of Decision

The court first held a trial addressing whether the creation of Buxup was an acquisition during marriage that would give rise to a presumption

5

that it was community property under section 760.[7]  The trial occurred over five days between February and December 2019, and the court issued a statement of decision on January 16, 2020.  As discussed, the court found Buxup was a business acquired during the marriage, giving rise to the presumption it was a community property asset.  The court found Neon Palm was not incorporated and was instead purchased by Buxup in 2003.

### 3.  The 2021 Trial and Statement of Decision

The court held another trial over three days in February and March 2021, again focused on Buxup.  In a statement of decision issued on May 28, 2021, the court noted that, based on the findings it made after the previous trial, Buxup "is a presumptive community property business."  The second trial was held to give Motiska an opportunity to rebut that presumption.  The court found Motiska failed to meet his burden of proof and did not rebut the presumption.[8]

Specifically, the statement of decision reflects that Motiska failed to show separate property funds were used to provide the initial funding for Buxup.  The court found Motiska did not keep adequate records to show "the funds used to acquire Palm Island Nursery and Buxup Corp. came exclusively from separate property funds."  The court concluded that, because Motiska failed to meet his burden to rebut the community property

---

[7] Section 760 states:  "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

[8] As the trial court noted, the presumption that property acquired by a spouse during marriage is community property may be rebutted by tracing the marital acquisition to a separate property source.  (*In re Marriage of Valli* (2014) 58 Cal.4th 1396, 1400.)  "A spouse's claim that property acquired during a marriage is separate property must be proven by a preponderance of the evidence."  (*Ibid.*)

6

presumption, "Buxup Corporation and DBA Palm Island Nursery remain community property."[9]

### 4. Subsequent Proceedings and the Court's October 27, 2022 Order

The parties reconvened on January 6, 2022, for a trial on remaining issues. During the January 6 trial session and in subsequent briefing and oral argument, the parties disputed whether Motiska had a viable claim for reimbursement under section 2640 for separate property contributions to Buxup. Ford contended the court's prior rulings had resolved all separate property claims to the business. Motiska argued his claim for reimbursement under section 2640 was a separate issue that had not been adjudicated and that could only arise after the court had determined Buxup was community property.

The court concluded Motiska did not have a claim for reimbursement under section 2640, because the asserted claim was based on Motiska's purported contribution of Neon Palm to Buxup, and the court had previously determined Motiska *sold* Neon Palm to Buxup for $1. At a hearing in July 2022, the court summarized its conclusion, stating in part: "[I]n my view, Neon Palm includes the dustpan, the crane, the truck, et cetera. And he made a decision to sell it for a dollar. And you can writ this, or you can do whatever you need to do with this. [¶] . . . [¶] But to me, Neon Palm was sold. It was a sale. It was a sale. He received. He set the value himself. There was no undue influence. There was no interference by Miss Ford. He set the value at a dollar. He sold it for a dollar. He received the dollar. It is a sale. It is done."

---

[9] In his appellate briefing, Motiska states he does not dispute, "for purposes of this appeal," the trial court's finding that Buxup is community property.

On October 27, 2022, the court issued a written order. In the order, the court reaffirmed its previous finding that Motiska sold Neon Palm to Buxup for $1. The court ruled Motiska did not have a section 2640 claim and would not be allowed to present evidence to substantiate such a claim if it related to Neon Palm.

At Motiska's request, the trial court certified there was probable cause to appeal the October 27, 2022 order, and this court granted Motiska's motion to appeal the order. (§ 2025; Cal. Rules of Court, rule 5.392.)

## II. DISCUSSION

Motiska contends his sale of Neon Palm (his separate property sole proprietorship) to Buxup (a community property corporation) was a contribution to the acquisition of a community asset within the meaning of section 2640, triggering a right to reimbursement. He argues the court erred by ruling he had no reimbursement claim under the statute and by declining to allow him to present evidence to substantiate such a claim.

As noted, section 2640, subdivision (b) provides in part: "In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's *contributions to the acquisition of property of the community property estate* to the extent the party traces the contributions to a separate property source."[10]

---

[10] Subdivision (a) of section 2640 defines the above italicized language: " 'Contributions to the acquisition of property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property." The forms of reimbursable contributions listed in subdivision (a) of the statute are not

8

(Italics added.) "This provision 'creates a substantive right of reimbursement that can be relinquished only by an express written waiver by the contributing spouse. [Citation.] "In the absence of such a written waiver the donative intent of the contributing spouse does not bar reimbursement. . . ." ' " (*In re Marriage of Buie & Neighbors* (2009) 179 Cal.App.4th 1170, 1175.)

There is no evidence Motiska made a written waiver of section 2640 reimbursement rights. The issue presented is antecedent to that: whether his *sale* of Neon Palm to Buxup was a *contribution* triggering such a right. As a threshold matter, we think Motiska's failure to raise this issue in May 2021 in the form of an objection—factually and legally—constrains his ability to raise the issue now. In the May 2021 statement of decision, the trial court decided that Motiska had not shown that "the funds used to acquire Palm Island Nursery and Buxup Corp. came exclusively from separate property funds." The court also reaffirmed its finding that Neon Palm was sold to Buxup for $1. If Motiska believed it to be the case that Neon Palm was not, in fact, acquired, but was donated, thereby making clear that later proceedings would be needed to further address the issue of tracing in the context of a reimbursement claim from Motiska, he needed to raise the issue then.

Motiska's failure to raise his section 2640 issue in May 2021 means that, factually, we must imply all necessary adverse findings that will support a determination against him on the issue he failed to raise. Under Code of Civil Procedure section 634, "if [a] statement of decision does not

exclusive; other contributions may be reimbursable as long as they contributed to equity acquisition or improvements and are not expressly excluded by the statute. (*In re Marriage of Nicholson and Sparks* (2002) 104 Cal.App.4th 289, 296.)

9

resolve a controverted issue or is ambiguous, and the omission or ambiguity was brought to the attention of the trial court, 'it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue.' " (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981; see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134.)

"The statutory statement of decision process following ' "the trial of a question of fact by the court" . . . [¶] . . . "is for the benefit of the court and the parties. To the court it gives an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and to make the case easily reviewable on appeal by exhibiting the exact grounds upon which judgment rests. To the parties, it furnishes the means, in many instances, of having their cause reviewed without great expense." ' [Citation.] A proper statement of decision is thus essential to effective appellate review. 'Without a statement of decision, the judgment is effectively insulated from review by the substantial evidence rule,' as we would have no means of ascertaining the trial court's reasoning or determining whether its findings on disputed factual issues support the judgment as a matter of law." (*Thompson v. Asimos*, *supra*, 6 Cal.App.5th at pp. 981–982.)

Ford argues that substantial evidence supports the trial court's implied finding that the sale of Neon Palm to Buxup Corp fairly reflected its value to Motiska at the time of the sale. We agree, particularly since he may have had any number of reasons for making this sale as he did at the chosen price point. We know, for example, that Motiska's choice of a $1 sale price was designed to avoid business transfer taxes. There could have been other reasons that we cannot know because the record on this point was not developed. But the bottom line is that low consideration does not necessarily mean there was no consideration. On this record, we are not persuaded the

10

dollar amount Motiska chose provides a basis to treat the transaction as something other than a sale, as the court found it to be, a finding that, again, Motiska states he does not challenge.

Even were it necessary to go beyond the unchallenged factual finding that Motiska sold Neon Palm to Buxup for $1, we would sustain the trial court's finding as a matter of law. We review de novo the court's determination as to whether the sale was a contribution triggering a reimbursement right under section 2640. (See *In re Marriage of G.C. & R.W.* (2018) 23 Cal.App.5th 1, 23 ["Since the relevant facts are undisputed, and the issue on appeal turns on whether the trial court properly applied the law governing the characterization of assets upon dissolution, we apply the de novo standard of review."].) Applying this standard, we hold the court correctly ruled Motiska's sale of Neon Palm to Buxup—at the sale price of $1 set by Motiska—was not a contribution to the acquisition of property of the community estate that would entitle him to reimbursement under section 2640. As a result, there was no need for the court to take additional evidence as to the amount of the purported contribution.[11]

In our view, a spouse's sale of property to the community (or, as here, to a business that is a community asset) differs from a freely given contribution that is subject to reimbursement under section 2640. Beginning with the language of the statute, the phrase "contributions to the acquisition of property" in section 2640, subdivision (b)—both its plain meaning and in light

---

[11] Because we conclude Motiska had no section 2640 reimbursement claim (and therefore no right to present evidence in support of such a claim), we need not address the parties' arguments as to whether prior proceedings addressed the section 2640 issue or provided Motiska an opportunity to litigate it. And because the court did not err, we need not consider the parties' contentions about whether the asserted error was prejudicial.

11

of the items identified as qualifying payments in section 2640, subdivision (a) (e.g., "downpayments" and "payments for improvements")—suggests a voluntary transfer of funds or assets to benefit the community. In contrast, a sale of property (i.e., the exchange of property for consideration) is not commonly viewed as a contribution by the seller to the buyer.

In reaching our conclusion, we also note that our Supreme Court, in a leading decision interpreting the scope of section 2640, emphasized that an important policy consideration in this context is the encouragement of contributions to benefit the community and protection of the expectations that arise from such contributions. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 919 (*Walrath*).) In *Walrath*, the court addressed the question whether a party's right to reimbursement under section 2640 was "limited to the original community property to which the contribution was made" or could instead be traced to other community assets that were obtained when the original community asset was refinanced. (*Walrath,* at p. 913.)

As one consideration supporting its conclusion that tracing to subsequently acquired community assets is permitted, the court stated this interpretation "is supported by important policy considerations. *It encourages married persons to freely and without reservation contribute their separate property assets to benefit the community*, and alleviates the need for spouses to negotiate with each other during marriage regarding continuing reimbursement rights. Under this interpretation, section 2640 *protects the general expectations of most people in marriage, i.e., that spouses will be reimbursed for significant monetary contributions to the community should the community dissolve.*" (*Walrath, supra,* 17 Cal.4th at p. 919, italics added; *id.* at p. 918 ["The effect of section 2640 was 'to overturn a long line of cases which had held that absent an agreement to the contrary, separate property

12

contributions to the community were deemed to be gifts to the community' ";
legislative history "reveals a 'legislative judgment that it would be fairer to
the contributing party to allow separate property reimbursement upon
dissolution.' "].)

As a rule, and on this record, these considerations do not support
treating a spouse's sale of separate property to the community for a single
dollar as a contribution triggering a reimbursement right under section 2640.
A spouse who decides to *sell* property to the community is electing *not* to
contribute the property "freely and without reservation" "to benefit the
community." (*Walrath, supra,* 17 Cal.4th at p. 919.) It also is not a "general
expectation" (*ibid.*) of most spouses that if they sell separate property to the
community, they will nevertheless receive *additional* reimbursement for the
transferred property, over and above the sale price, if the community
dissolves. There is no clear guidance on this point in the section 2640 case
law to date. But we believe the most predictable rule, and the one that
facilitates planning by prospective spouses contemplating whether to transfer
separate property to a marital community, is not to allow second-guessing of
whether a seller's unilaterally chosen sale price amounts to a de facto gift.

Motiska insists that his sale of Neon Palm to Buxup should be treated
differently from other sales. He contends the $1 sale price he selected does
not accurately reflect the value of Neon Palm, so the court should have
disregarded the sale price, treated the transaction as being "akin to a gift to
the community," determined the actual value of Neon Palm, and awarded
that amount to Motiska as reimbursement under section 2640. We are not
persuaded that, in the absence of undue influence or other circumstantial
evidence that a selected price should be treated as a sham, the value the

13

parties placed on property in a sale should be subject to ad hoc reexamination.

For the reasons we have discussed, transfer of property by sale to the community is not the same as transfer of property by contribution to the community. The need to determine the *amount* or *value* of a spouse's separate property contribution under section 2640—the exercise Motiska contends the court should have undertaken here—arises when the spouse has in fact made a contribution. (§ 2640, subd. (b); see, e.g., *Walrath*, *supra*, 17 Cal.4th at p. 924 [reimbursement is based on amount of separate property contribution]; *In re Marriage of Bonvino* (2015) 241 Cal.App.4th 1411, 1432 [separate property contribution is measured by value of contribution at time it was made; community is entitled to any appreciation].) But when a spouse transfers property to the community by sale, the price establishes its value.

This accords with established principles of contract law, where the sale price set by the parties to a transaction is generally honored as representing valid consideration. (See 1 Witkin, Summary of Cal. Law (11th ed. 2023) Contracts, § 205 ["[T]he consideration need not necessarily be useful, and there is no requirement of adequacy to make the contract enforceable in an action at law."].) As the trial court emphasized, Motiska decided to sell Neon Palm to Buxup, and he decided to set the sale price at $1, without any involvement or interference by Ford or others. As noted above, he had tax-driven financial reasons for choosing $1, and years later, under different circumstances, we decline to permit him to disavow the validity of the sale and characterize the transaction as something other than what he claimed it was in making the transfer. We are particularly concerned with the line-drawing problems the rule proposed by Motiska would present. If a spouse who sells property to the community can later ignore the price he or she

14

selected, then even a sale for a substantial price could be revisited based on a claim the price does not reflect the actual value of the property sold. In our view, the better rule in this context is to treat an otherwise valid sale as a completed transaction in which the selling spouse has already received reimbursement for transferring property to the community, rather than as a "contribution" potentially warranting additional reimbursement under section 2640 whenever there is a discrepancy between the sale price and the claimed value of the property. A sale for $1 may test that rule at its limit, but if the rule is discarded here we see no principled way of distinguishing between cases in which a sale price must be respected and cases in which it will be open to later reexamination.

Motiska notes courts have in various contexts referred to $1 as a nominal amount (although that fact did not generally invalidate the claims or transactions at issue). (*Schraier v. Schraier* (1958) 163 Cal.App.2d 587, 588–590 [alimony award of $1 per month appropriately allowed trial court to retain jurisdiction to consider future modification requests]; *Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 986, 1006–1007 [statutory damages award of $1 established plaintiff was prevailing party for purposes of attorney fees]; *Davis v. Fresno Unified School Dist.* (2015) 237 Cal.App.4th 261, 277 [lease of school property for $1 as component of statutory "lease-leaseback" financing method].) Even if $1 is often considered a nominal amount, that general observation does not persuade us that the sale price selected by Motiska should be disregarded, or that he should receive additional reimbursement above that price.

Motiska argues "[a] sale for a nominal amount is akin to a gift." In support, he cites *Bertelsen v. Bertelsen* (1942) 49 Cal.App.2d 479, 484, in which the court stated that a party acting as "attorney in fact" for another

15

person lacked authority to make a gift of the principal's property, and that a grant deed listing a price of $10 was also ineffective to convey title, because "a gift deed and a deed for a nominal sum are in effect the same." *Bertelsen* provides no basis to set aside Motiska's sale of Neon Palm or to question the price he set. Unlike the attorney in fact in *Bertelsen*, Motiska by 2003 was the sole owner of Neon Palm and had full authority to sell it and to set the sale price.

Finally, Motiska argues that the sale price was "not indicative of value" because it was a "related-party transaction," and that factors other than the sale price must be considered to determine the "value" of his "contribution" to the community. We disagree. The authorities Motiska cites on these points involve different circumstances. (See *In re Estate of Spitly* (1932) 124 Cal.App. 642, 643, 645–646 [in computing inheritance tax, value of corporate securities held by estate must be measured by fair market value at decedent's death rather than by later appraisal that arguably reflected inflated value due to "slimy foundation of false statements" and "manipulation of the stock market" by stock issuer]; *Golden Day Schools, Inc. v. Office of Administrative Hearings* (2017) 8 Cal.App.5th 1012, 1034, 1017–1018 [conditions in contracts between nonprofit corporation and regulatory agency required that, when an expense charged by corporation was a related-party transaction, corporation had to "establish the transaction as 'fair and reasonable and conducted at arm's length' "]; 26 U.S.C. § 2512(b) [addressing valuation of gifts for purposes of gift tax "[w]here property is transferred for less than an adequate and full consideration"].)[12] Because of the heightened

---

[12] See also *Stroman v. Lynch* (1949) 91 Cal.App.2d 406, 408 (value of household furniture and furnishings in conversion action); *People v. Grant* (2020) 57 Cal.App.5th 323, 329 (fair market value of stolen property to prove

16

importance of objectively accurate asset values in such contexts as accounting and tax, it makes sense that courts are sometimes willing to second-guess subjectively reported values in some circumstances.  But that is not what we are dealing with here.  These cases do not persuade us that, in the present context, we should ignore the sale price Motiska selected.

### III. DISPOSITION

The trial court's October 27, 2022 order determining Motiska has no section 2640 claim pertaining to Neon Palm is affirmed.  Ford shall recover her costs on appeal.

STREETER, J.

WE CONCUR:

BROWN, P. J.
HIRAMOTO, J.[*]

---

grand theft and burglary); *In re Marriage of Hewitson* (1983) 142 Cal.App.3d 874, 882, fn. 8 (general definition of fair market value).

[*] Judge of the Superior Court of California, County of Contra Costa, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:      Superior Court of California, County of Solano

Trial Judge:     Hon. Dora M. Rios

Counsel:        C. Athena Roussos; Law Offices of Michael L. Gums and Michael L. Gums, for Appellant.

                  Montagna Family Law and Stephen A. Montagna, for Respondent.